EDWARD P. ALLIS CO. v. MADISON ELECTRIC LIGHT, HEAT AND POWER CO., *et al.*

1. The denial of motions to set aside a referee's findings, and for a new trial, is such an acceptance of the findings as will support a judgment, under Laws 1891, Chap. 100, Sec. 9, providing that, if the referee's report is accepted, judgment may be entered thereon.

2. The phrase "bankable paper," as used in a contract providing that notes to be given, due in 6, 12 and 18 months, respectively, and drawing 7 per cent interest, should be bankable paper, means not discountable paper necessarily, but paper of such high credit that, if the time of payment was reasonable and the banks had loanable funds, it could be discounted.

3. Notes of    third person are "collateral security," within Comp. Laws, Sec. 5468, providing that no person is entitled to a mechanic's lien who takes collateral security in the same contract.

(Opinion filed March. 17, 1897.)

Appeal from circuit court, Lake county.    Hon. J. W. JONES, Judge.

Action to foreclose a mechanic's lien.    Defendants had judgment, and from an order denying a new trial, plaintiff appeals.    Affirmed.

The facts are stated in the opinion.

*C. S. Palmer* and *J. H. Williamson,* for appellant.

Whether the notes were bankable paper or not is not material in this controversy, as the plaintiff would have a

right under the statute to enforce his mechanic's lien independent of any collateral security which he might hold.    Hill *et al.* v. Alliance Building Co. *et al.*, 6 S. D. 160, 60 N. W. 752.    The fact that the materials were sold and delivered in another state does not affect the right of lien.    Mallary v. LaCrosse Abbattoir Co., 80 Wis. 174; Gaty v. Casey, 15 Ill. 192; St. Louis Bridge Co. v. M. C. & R. Co., 72 Mo. 664; Fagan v. Boyle Ice Co., 65 Tex. 324; Thompson v. Railroad, 45 Minn. 13, 47 N. W. 259.

*A. Frizzell* and *Geo. R. Farmer,* for respondents.

There should be a direct allegation in the complaint that materials were furnished to be used in the construction of the building upon which the lien is claimed.    Cohn v. Wright (Cal.) 26 Pac. 643.    It is immaterial whether the contract was that the notes were to be indorsed by Trow, and when so indorsed were to be accepted as bankable paper, or whether the contract simply called for "bankable paper," for in either case defendant company complied with its part of the contract. The party who sold the machinery having stipulated for a mode of payment inconsistent with the idea of having a lien, had a right to demand the cash and the notes, and this right precluded the right to a mechanic's lien.    Jones & Magee L. Co. v. Murphy, 19 N. W. 901; Sole v. Dawes, 7 Cal. 575, 14 Cal. 250. Where property is sold and delivered in another state, under a contract which precludes the idea of a mechanic's lien, and which, when completed, would, under our statute, inhibit the vendor from claiming a lien, the right of lien does not exist.    Birmingham Iron Foundry v. Glen Cove Mfg. Co., 78 N. Y. 30.

CORSON, P. J.    This is an action to enforce a mechanic's lien for a balance claimed to be due plaintiff of $2,670.89 and interest, from December 10, 1891, for machinery furnished the defendant the electric light company.    The case was tried by a referee, who found the facts and stated his conclusions of law thereon, upon which judgment was rendered in favor of the de-

fendants. From this judgment, and an order denying a new trial, the plaintiff appeals.

The findings of the referee state fully and clearly the transactions between the plaintiff's assignors and the electric light company, and we insert the more important ones, as constituting a statement of facts in the case: "(5) That on the 1st day of August, 1889, the defendant the Madison Electric Light, Heat & Power Company, at Milwaukee, in the state of Wisconsin, purchased from the executors of the last will and testament of Edward P. Allis, deceased, one Corliss engine complete, with boiler, stack, heater, pumps, with piping, connections, and castings ready to be set up, f. o. b. cars in Milwaukee, as alleged in the plaintiff's complaint in this action; it being a part of the agreement that said executors should furnish a man to set up and start said engine free of charge, except board, while doing so, in Madison, South Dakota; and all said property so sold was by said executors delivered to said defendant, said Madison Electric Light, Heat & Power Company, at Milwaukee, in the state of Wisconsin, on the 13th day of September, 1889. (6) That, in consideration of the sale and delivery of said engine, boiler, and other property as above stated, said defendant, Madison Electric Light, Heat & Power Company, agreed to pay said executors the sum of thirty-five hundred and twenty-three dollars ($3,523), as follows: Five hundred dollars in cash, and the balance in equal payments, due in six, twelve, and eighteen months, respectively, from date of first payment; and all of said deferred payments were to be secured by 'bankable paper,' drawing seven per cent interest. (7) That, in accordance with said agreement, said Madison Electric Light, Heat & Power Company paid to said executors the sum of five hundred and twenty-three dollars in cash, and on the 17th day of October, 1889, executed its promissory note for the balance of the purchase price of said engine, boiler, and machinery, which notes were in three equal payments, of one thousand dollars each, and by their terms became due in six,

twelve, and eighteen months from the 17th day of October, 1889, which notes were signed by J. A. Trow, as surety, with the additional endorsement of the Citizens' National Bank of Madison, by J. A. Trow, cashier; and that the notes so executed and endorsed were by the said Madison Electric Light, Heat & Power Company sent to said executors at Milwaukee, in the state of Wisconsin, which said notes were by said executors received, and were retained by them until after the 25th day of January, 1890, when they were returned to the maker as not being bankable paper. (8) That the said notes executed by the said Madison Electric Light, Heat & Power Company, and signed by J. A. Trow as surety, with the additional endorsement of the Citizens' National Bank, by J. A. Trow, cashier, and which were sent to the executors of Edward P. Allis, deceased, were intended as security for the payment of the balance due to said executors from the Madison Electric Light, Heat & Power Company for said machinery, and were for the amount agreed upon, and came due at the times it was agreed they should, and were in every respect such notes as the said executors had stipulated to accept from said Madison Electric Light, Heat & Power Company, viz: bankable paper. (9) That on the 15th day of January, 1890, and while the executors of the will of Edward P. Allis retained the notes of the Madison Electric Light, Heat & Power Company, signed by J. A. Trow as surety, with the additional indorsement of Citizens' National Bank of Madison, by J. A. Trow, cashier, said executors attempted to perfect a mechanic's lien in the name of Edward P. Allis & Co. upon the property described in the complaint for the machinery sold to the Madison Electric Light, Heat & Power Company, by filing a just and true account of the articles furnished as aforesaid, and the amount due for the same, in the office of the clerk of the circuit court in and for Lake county, South Dakota." The court further finds that on August 7, 1889, the said electric light company issued coupon bonds to the amount of $10,000, payable June 1, 1899, and se-

cured the same by a trust deed upon all the property of that company. James A. Trow, named as trustee in the deed of trust, and the Citizens' National Bank were made defendants, and subsequently the receiver of the Citizens' National Bank and S. A. Cumins and Fred Cushman, holders of a part of said coupon bonds, were made defendants. The controversy is mainly, therefore, between the plaintiff and the trustee in the trust deed and beneficiaries therein.

The appellant contends that the court did not either make findings itself, nor formally accept those of the referee, and therefore there is nothing to support the judgment. This contention is not tenable, for the reason that the court, in overruling the motion to set aside the findings, and in denying appellant's motion for a new trial, did, in effect, accept the referee's report. Section 9, Chap. 100, Laws 1891, provides: "If the report is accepted by the court, judgment may be entered thereon." And Section 10 provides: "In case a new trial is granted, or if the report is not accepted, the parties may again refer the case," etc. The refusal of the court to grant a new trial and the entry of judgment necessarily implied that the court accepted the report of the referee, and no formal entry of such acceptance was required.

Exceptions were taken to the fifth, eighth, ninth, and thirteenth findings of fact, as not being justified by the evidence. There is not sufficient merit in these exceptions to require a discussion of them, except as to the eighth finding. The principal objection to this finding is that the court was not justified in finding that the notes executed by the electric light company, and endorsed by J. A. Trow and the Citizens' National Bank, constituted "bankable paper," and this contention is based upon the claim that the testimony of the witnesses Brace, McKinney and Baker was incompetent upon the issue of whether or not the notes sent to the plaintiff constituted bankable paper. The witnesses testified that they were engaged in the banking business in Sioux Falls, and had been so engaged for a number

of years; that they knew the financial standing of James A. Trow and the Citizens' National Bank in 1889, among bankers; and that the paper in controversy was bankable paper. They were all officers of banks in Sioux Falls in this state, and were, as stated by them, acquainted with the financial standing and reputation of Trow and the bank. This rendered them competent to testify as to the character of the paper. It was shown on cross-examination that these gentlemen, as officers of their respective banks, by reason of the stringency in the money market and the demands of their customers, had declined to discount or purchase the paper. But this fact did not render the witnesses incompetent to testify as to whether or not the paper was bankable, or tend to discredit their evidence upon that subject. It will be noticed that the parties had, by their agreement, fixed definitely the time of payment of the notes at 6, 12, and 18 months, and fixed the rate of interest at 7 per cent. They had thus eliminated two important elements entering into the character of bankable paper.

What, then, was intended by that term in the contract? Evidently, paper so secured as to be regarded as bankable paper by banks—first-class paper. The term "bankable" does not seem to have any well-defined legal meaning in the law. Mr. Bouvier says of this term: "In mercantile law. Bank notes, checks, and other securities for money received as cash by the banks in the place where the word is used." He then, in a note, discusses what bank notes or bills are usually receivable, and concludes: "The word is also sometimes applied to promissory notes and bills of exchange in high credit, thereby denoting that they will be discounted by the banks." Mr. Anderson in his Law Dictionary thus defines the term: "Receivable as the equivalent of cash at the bank; receivable for discount by a bank; as a bankable or nonbankable bill or other paper." But neither Mr. Bouvier nor Mr. Anderson refers to any authorities. Mr. Webster defines the term as "receivable at a bank." We conclude, therefore, that the term, as used in

the contract we are considering, was intended to mean high credit paper, which, if the time of payment was reasonable and the banks had loanable funds, would be discountable paper. No other meaning could have been intended by either party. The high credit of the maker and indorsers might be such that banks would readily accept the paper in the form of sight drafts or short-time paper, which, when made in the form of long-time paper, the banks would not ordinarily discount. Our conclusion is that the paper in controversy was, within the meaning and intent of the parties, "bankable paper," and that the evidence fully justified the finding of the referee.

Could the plaintiff's assignors, after receiving precisely such notes as they had agreed to accept on the sale of the machinery, afterwards abandon their notes, and file a lien for their money as against the bondholders, under a trust deed secured by a mortgage executed about the time the contract for the machinery was entered into? It seems to us the question must be answered in the negative. If the notes were taken as security, as the referee finds, they were in the nature of collateral security, as they were endorsed by Trow and the Citizens' National Bank. While a note given by the party primarily liable will not ordinarily be held to be a waiver of the lien (Hill v. Alliance, 6 S. D. 160, 60 N. W. 752), a note with third parties as sureties will be regarded as collateral security, and held to constitute such waiver . (Brady v. Anderson, 24 Ill. 110; Croskey v. Corey, 48 Ill. 442). See Phil. Mech. Liens, § 279, and cases cited. " 'Collateral security,' in bank phraseology, means some security additional to the personal obligation of the borrower." Shoemaker v. Bank, 2 Abb. U. S. 416, Fed. Cas. No. 12,801; 3 Am. & Eng. Enc. 311. And such, we apprehend, is the general understanding of the meaning of that term. Certainly the signing of the notes by Trow, and the endorsement by the bank, parties then in good financial standing, constituted additional security to the obligation of the electric light company, and the contract on the part of the plaintiff's assignors

for such additional security would seem to be entirely inconsistent with the idea of a lien upon the property.    But, whether or not such would be the general rule in this state, the rule is established by the Code that "no person is entitled to a mechanic's lien who takes collateral security on the same contract." Comp. Laws, § 5468.    The notes, therefore, having been executed in conformity with the contract, and signed by Trow, and indorsed by the bank, which constituted the taking of collateral security on the same contract, within the meaning of our Code, it necessarily follows that plaintiff's assignors waived all claim to a lien upon the property.

These conclusions lead to an affirmance of the judgment. There were a number of other questions presented by the record, but, in the view we take of the case, it will not be necessary to consider them.    The judgment of the circuit court and the order denying a new trial are affirmed.