# The Lincoln National Bank of Pittsburgh *v.* Miller, Appellant.

*Negotiable instruments — Promissory notes — Discount — Endorsers—Endorsement in blank—Liability.*

1. Under Section 34 of the Negotiable Instruments Act of May 16, 1901, P. L. 194, the endorsement in blank of a promissory note renders it payable to bearer; the party in possession thereof may lawfully negotiate it by mere delivery and there is no obligation upon the part of the purchaser to require the endorsement of the party who is negotiating the instrument.

2. Where the president of a bank is in possession of a promissory note made by a customer and endorsed in blank by the payee, the bank may lawfully discount the note and pay the proceeds to the individual account of the holder. In such case the presumption is that the holder is the lawful owner: First Nat. Bank of Bloomsburg v. Gerli, 232 Pa. 465, distinguished.

3. In an action on a promissory note it appeared from the statement of claim and affidavit of defense that a note which had been endorsed by the defendant had been given to the president of a bank by the maker, with the understanding that neither the maker nor the endorser would be liable thereon until the maker should notify the bank president that he desired to purchase with the proceeds, certain stock of the bank; that the president of the bank, in violation of the agreement, discounted the note at the bank, without endorsing it, and caused the proceeds to be credited to his individual account, having transferred the stock to the maker of the note; that the note in suit was given in renewal of such note, and after the violation of the agreement under which the original note was given; there was no allegation that defendant did not know of the discount of the original note at the time the note in suit was given. It further appeared that plaintiff was a holder in due course of the note in suit. *Held,* the court properly entered judgment for plaintiff for want of a sufficient affidavit of defense.

Argued Oct. 9, 1916. Appeal, No. 21, Oct. T., 1916, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1915, No. 497, for plaintiff, for want of a sufficient affidavit of defense, in case of The Lincoln National Bank of Pittsburgh, a Corporation, v. James M. Miller.

Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Affirmed.

Assumpsit on a promissory note.

Rule for judgment for want of a sufficient affidavit of defense.

SWEARINGEN, J., filed the following opinion:

This is a rule for judgment for want of a sufficient affidavit of defense. The action was brought by The Lincoln National Bank, the holder, against James M. Miller, the endorser, of a note of which the following is a copy:

"2500.            Pittsburgh, Pa., January 22, 1915.

"Four months after date I promise to pay to the order of James M. Miller, twenty-five hundred dollars, payable at The Lincoln National Bank of Pittsburgh, without defalcation. For value received, with five per cent. interest.

"W. SHEAFE MILLER.

"ENDORSED:

"James M. Miller.

"Pd. 3/24/1915, $6.80.

"U. S. Internal Revenue 50c stamp (cancelled)."

The claim was for the principal with interest from the date of maturity and protest fees, less, however, the sum of $6.80, alleged to have been paid on account. After alleging in its statement of demand the making of said note, the plaintiff then averred:

"The said note was thereupon endorsed in blank by the said James M. Miller and being so endorsed was thereupon, before maturity, in good faith and for a valuable consideration, delivered to the said plaintiff, which then became, has ever since been, and is now the holder thereof in due course."

The dishonor of the note, its protest and notice thereof to the defendant, were properly alleged.

None of the foregoing averments is directly denied.

Neither is there any allegation that the plaintiff had any express notice of the facts stated in the affidavit of defense. The allegations of the affidavit of defense are substantially these: When the original note, of which the note in suit is a renewal, was given, Charles B. McLean, the president of the plaintiff bank, having advised W. Sheafe Miller that he ought to be the owner of some stock in the bank, and W. Sheafe Miller having stated that he had not the necessary funds, it was agreed that Miller need not invest any money, but that he should give his note for $2,500, which McLean would hold and would not use, and whenever, at any later time, Miller should notify McLean that he wanted ten shares of said stock, he (McLean) would let him have that number at $250 per share, and the note would then become payment therefor, and that, until such notice was given, neither McLean nor any other person would hold Miller, nor James M. Miller, the endorser, liable to pay the note. The note was accordingly made and was received by McLean. W. Sheafe Miller never did give notice of his desire to take said stock. On the contrary, "in January, 1913," he notified McLean in writing that he wished to terminate the agreement. Within five days after the note was given, McLean procured the plaintiff bank to discount it, without the knowledge or consent of the maker or endorser. The bank did not require McLean to show any evidence of ownership—he did not endorse the note nor become a party thereto. The bank credited the proceeds to McLean, without the knowledge or consent of the maker or endorser. McLean also procured the transfer to W. Sheafe Miller of ten shares of stock, of which the said maker and endorser were ignorant, but said shares were never delivered nor tendered. Six dollars and eighty cents were not paid on account of the note, but the plaintiff appropriated that sum from the defendant's balance in the bank. W. Sheafe Miller was, at the time of the making of the original note and the discount thereof, a customer in said bank.

It is only by inference that the date "of the original note" can be approximated. It is averred that, in January, 1913, the maker gave McLean notice of his desire to terminate the agreement, so that the date of the original note must have been prior thereto. Neither the terms of the first note nor the number of renewals thereof are stated. There is no allegation that this defendant was a party to, or had any knowledge of, the arrangement between W. Sheafe Miller and McLean. So far as appears, the defendant lent his credit to W. Sheafe Miller without any restriction at all. It is clear, however, that the note in suit was given long after W. Sheafe Miller notified McLean of his desire to terminate the contract. Thus the proposition of the defendant is that, when C. B. McLean, the president of the plaintiff bank, presented this note for discount, the same having been obtained by him for the purpose aforesaid, there was no presumption of his lawful ownership; but the note upon its face raised a presumption of a right to the proceeds in the maker or endorser, one of whom was a customer; that these facts constituted notice to the plaintiff of a defect in McLean's title to the note which he was negotiating; and that, therefore, the plaintiff was charged with the duty of inquiring of the maker and endorser before crediting the proceeds to McLean, which it failed to perform. Consequently, the defendant is not liable.

In the absence of an averment to the contrary, it must be assumed that the endorsement of the original note was the same as that of the note in suit, viz: in blank. If so, it was thereafter "payable to bearer" and might "be negotiated by delivery": Section 34, Negotiable Instruments Act, 1901, P. L. 194.

Thus when McLean presented the note for discount, he had all the indicia of ownership required by the law. He had possession of a genuine instrument, which could be lawfully negotiated by mere delivery. There is no obligation upon the purchaser of such paper to require the endorsement of the party who is negotiating it.

Mere delivery passes the title and warrants the purchaser in paying the proceeds to the negotiator. Is the rule different where, as in this case, the party presenting the note is the president of the discounting bank? The defendant contends that the rule is thereby changed, and he relies upon the case of First National Bank v. Gerli, 232 Pa. 465, as authority for the proposition. We have examined that case, but we cannot agree that it determines the principle for which the defendant contends. It will be observed that the maker of that note was the cashier of the discounting bank. The note was payable to Ratti, a customer, and was by him endorsed. The cashier presented the note for discount and it was discounted by the teller, and the proceeds were credited to the cashier's individual account, by the latter's direction. The bank's contention was that the cashier was presumed to be a holder in due course, the endorsement being for his accommodation. But the court held the rule inapplicable, where the note was made by a cashier to the order of a customer and was discounted by the same bank.

It will be observed that the facts alleged in this affidavit of defense are quite different from those in the case just cited. In that case, the note was the cashier's; in this McLean was not a party in any manner, except as holder in the ordinary legal way. In that case, the note was discounted and the proceeds credited to the cashier, by the latter's direction, that is, the whole thing was done by the cashier; in this, the note was discounted by the bank, as averred in the pleadings, and presumably by the board of directors in the absence of any averment to the contrary.

We cannot, therefore, agree that the principle of that case applies to this one. In our judgment, the circumstances averred in this affidavit do not constitute notice to the plaintiff of any defect in McLean's title, and they do not raise any presumption that he was not entitled to the proceeds of the note.

There is another consideration which we think renders this affidavit of defense insufficient. While it is averred that the original note was discounted, without the knowledge or consent of either the maker or endorser, yet there is no allegation that the defendant was unaware of the discount at the time the note in suit was given, which was a renewal. If he had knowledge of the discount, when the note in suit was given, his act in renewing the same was a ratification of the original discount. If, on the other hand, he did not have such knowledge, the fact of the renewal would not preclude his pleading the defense which formerly existed. Hence it was most material that the defendant aver his want of knowledge, if such was the fact. His failure to do so must therefore be taken against him.

Upon due consideration we are of opinion that the affidavit of defense is insufficient to prevent judgment. Therefore, the rule must be made absolute.

The court made absolute plaintiff's rule for judgment for want of a sufficient affidavit of defense. Defendant appealed.

*Error assigned* was in entering judgment for plaintiff for want of a sufficient affidavit of defense.

*W. S. Miller,* for appellant.

*Charles Alvin Jones,* with him *Sterrett and Acheson,* for appellee.

PER CURIAM, January 8, 1917:

This case is clearly distinguishable from First National Bank v. Gerli, 232 Pa. 465, relied upon by counsel for appellant. The distinction is sufficiently pointed out in the opinion of the learned court below making absolute the rule for judgment for want of a sufficient affidavit of defense, and, on that opinion, the judgment is affirmed.