BOSWORTH, Receiver, Respondent, vs. GREILING, Appellant.

*October 12, 1933—January 9, 1934.*

For the appellant there was a brief by *Strehlow & Cranston* of Green Bay, and oral argument by *Max H. Strehlow*.

For the respondent there was a brief by *North, Parker, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, and oral argument by *F. N. Trowbridge* and *J. R. North*.

The following opinion was filed November 7, 1933:

NELSON, J. The note upon which recovery is sought is in the amount of $12,000, is dated February 9, 1931, is signed by the defendant alone, and is the sixth renewal of a like note dated January 11, 1929. Nothing has been paid on the note except $6.09, which was credited thereon after the bank closed, said sum being the amount which the defendant had on deposit at the time the bank closed. When the original note was given the defendant was a holder of a considerable amount of the preferred stock of Waterways Engineering Company, a corporation engaged in the business of bridge building, harbor dredging, and marine construction work with headquarters at Green Bay. The company had a number of contracts on which work was either wholly or largely suspended during the winter months. The company did practically all of its banking business with the McCartney National Bank. At the time the original note was given the company was in need of funds but was un-

able to borrow any additional money from the bank for the reason that it was then heavily indebted to the bank and had no further collateral to pledge as security. In this situation Mr. Tayler, the cashier of the bank, suggested to Mr. Heffernan, who was the president, treasurer, and general manager of the company, that the defendant might be willing under all of the circumstances to give his note to the bank and borrow the sum of $12,000 for the accommodation of the company. The matter was taken up with the defendant, who was apparently not unwilling to assist the company. The defendant and Mr. Heffernan went to the bank where the situation of the company, its needs and prospects were discussed by them and Mr. Tayler. At this meeting Mr. Tayler explained to the defendant that the company needed money temporarily, that the bank was not in a position to loan to the company as much money as it needed, and asked the defendant if he would "go along." Tayler emphasized the fact that the loan was to be a temporary one and would be taken care of out of the first substantial moneys that came to the company; that large amounts of money would be coming in in the spring and that those moneys would be used to pay defendant's note. Mr. Heffernan, who was defendant's only witness who testified as to the conversation had at this meeting (the defendant himself not testifying at all), stated that he did not recall any definite promise as to the company's agreeing to the arrangement excepting that Mr. Tayler, after stating that the note would be taken care of out of the first substantial moneys that came in, said to him, "You will do that, Mr. Heffernan," to which he replied, "Yes, of course, that is what we want to do." Thereafter the defendant gave his note to the bank and the amount thereof was credited to the company on the books of the bank. The company, at substantially the same time, delivered its note for $12,000 to the defendant. When the note became due the defendant wanted the

company to pay it. Mr. Heffernan testified that the company was willing to pay it but that Mr. Tayler would not permit the company to do so. It appears that the company had from time to time executed and delivered to the bank certain assignments, or instruments in the nature of assignments, covering moneys which were to come in on its contracts, to secure loans made to it by the bank. The so-called assignments were not presented to the government of the United States or to the state of Wisconsin, for whom the company was performing contract work, because both Heffernan and Tayler knew that neither the United States nor the state of Wisconsin would recognize such assignments. The bank, however, took the assignments for what they were worth to protect its loans to the company. There is no suggestion in the evidence that the company ever gave its check to the defendant for the amount of the note. There is no evidence as to what, if anything, the defendant did with respect to taking the matter up directly with the bank. However, it does appear that the company paid the interest on the original note and that the defendant executed and delivered a note in renewal thereof. According to the evidence, when each of the renewal notes became due, substantially the same things occurred. Each time the defendant went to Heffernan and wanted the note paid and each time Mr. Heffernan reported to the defendant that the bank would not permit the note to be paid. It appears that after the original note was given and at different times while the several renewals were in effect, the company from time to time received large contract payments which were deposited in the bank. All of the evidence relating to the conversations between Mr. Tayler, Mr. Heffernan, and the defendant which took place at the bank before the original note was given was received without objection by the plaintiff, who evidently relied solely on the proposition that whatever

agreement was made before the original note was given did not constitute a valid defense to the note sued on because the defendant, having given renewal notes, had waived any defense that he might have had to the original note.

The verdict framed by the court consisted of three questions:

"1. Did the defendant, Charles H. Greiling, sign an accommodation note for the Waterways Engineering Company to the McCartney National Bank, dated January 11, 1929, in the sum of $12,000, which note has been renewed by the defendant, Greiling, periodically thereafter, up to and including the note dated February 9, 1931?"

This question was answered "Yes" by consent of the parties.

"2. When the defendant, Greiling, signed the original note on January 11, 1929, was it mutually agreed between J. H. Tayler for the bank, R. A. Heffernan for the Waterways Engineering Company, and Charles H. Greiling, that the loan of $12,000 as evidenced by the note would be repaid out of the first moneys thereafter to come into the hands of said Waterways Engineering Company, out of its operations?"

This question was also answered "Yes" by consent of the parties.

"3. Did the defendant, Charles H. Greiling, sign the renewal notes with knowledge that the proceeds obtained by the Waterways Engineering Company, from its operations, had been sufficient to have paid the note and that such money had not been applied as payment upon his accommodation note?"

This question was answered "Yes" by the jury.

Upon the coming in of the verdict the plaintiff moved for judgment on the verdict and the defendant moved for judgment notwithstanding the verdict. The court granted the plaintiff's motion, holding that whatever defense the

defendant may have had to the original note he had waived by giving notes in renewal thereof.

The defendant assigns as error the granting of plaintiff's motion for judgment on the verdict and contends (1) that it should be held that the defendant was released by virtue of the agreement that the note would be taken care of out of the first substantial moneys coming to the company (sufficient moneys having been thereafter received by the company), and (2) that it should be held that the note was discharged, since the defendant was an accommodation maker, and the bank from time to time, as the company deposited moneys with it, had within its control the means of complete satisfaction of the note.

As to the first contention, assuming that the oral agreement was admissible in evidence, which seems very doubtful, and even assuming that the failure of the bank and the company to take care of the note as promised and agreed might operate as a defense to the original note, which we do not decide, it seems clear that the defendant fully waived any such agreement by renewing the original note six different times.

It seems to be well established that where the maker of a note against which there is a valid defense not based upon public policy, executes a renewal note, he waives such defense. *State Savings Bank v. Deal,* 200 Iowa, 490, 203 N. W. 293; *First State Bank v. Gunderson,* 54 S. Dak. 473, 223 N. W. 596, 600; *Olson v. Union Central Life Ins. Co.* 58 N. Dak. 176, 225 N. W. 124; *Lincoln Nat. Bank v. Miller,* 255 Pa. St. 467, 100 Atl. 269; *Thorpe v. Cooley,* 138 Minn. 431, 165 N. W. 265; *McCormick H. M. Co. v. Yoeman,* 26 Ind. App. 415, 59 N. E. 1069. See, also, note in 35 A. L. R. 1258. In *German Nat. Bank v. Barber,* 159 Wis. 109, 149 N. W. 767, it was held that whatever right the appellants therein had to insist upon their release from liability as sureties on account of the relinquishment by the

holder of certain collateral, was waived by them when they gave their note to the bank continuing their liability with full knowledge that the stock had been so relinquished as security for the note.

The jury found that the defendant signed the renewal notes with knowledge of the fact that the proceeds obtained by the company from its operations had been sufficient to pay his note had it been applied in payment thereof. That finding of the jury is, we think, amply supported by the evidence.

The difficulty with defendant's second contention is that, while he was an accommodation maker, his liability to the bank was primary. Sec. 116.01, Stats., provides:

"The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay same. All other parties are 'secondarily' liable."

Sec. 116.34 provides:

"An accommodation party is one who has signed the instrument as maker . . . without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

It seems clear, therefore, that the defendant was primarily liable to the bank even though the bank knew him to be only an accommodation party. *Schoenwetter v. Schoenwetter,* 164 Wis. 131, 159 N. W. 737; *Rosendale State Bank v. Holland,* 195 Wis. 131, 217 N. W. 645. The contention that defendant was discharged because the bank at various times had within its control the means of complete or partial satisfaction of the note is based upon sec. 117.38 (4a). That section provides:

"A person secondarily liable on the instrument is discharged: . . . By giving up or applying to other purposes

collateral security applicable to the debt, or, there being in the holder's hands or within his control the means of complete or partial satisfaction, the same are applied to other purposes."

That section is obviously not applicable to the facts here since the defendant was primarily, not secondarily, liable to the bank. We think defendant's second contention without merit.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on January 9, 1934.