UNITED STATES TRUST COMPANY OF NEW YORK, Plaintiff, *v.* FREDERICK T. FRELINGHUYSEN et al., Defendants.

Supreme Court, Special Term, New York County, March 15, 1944.

*M'Cready Sykes* and *Peter M. Sykes* for plaintiff.

*Charles H. Tuttle* and *Stoddard B. Colby* for defendants.

SHIENTAG, J. Plaintiff and defendants move for summary judgment. The action is to recover certain unpaid interest on defendants' bond, together with the amount of payments made by plaintiff by way of taxes, assessments and insurance premiums. The answer denies that the bond sued on was delivered for a valuable or adequate consideration and, by way of defense, alleges that by the execution of the bond the defendants became sureties only and not principal debtors and the plaintiff must resort to the estate of the original mortgagor.

Plaintiff is the holder of a bond for $50,000 and a mortgage for the same amount (reduced by partial payments to $42,000) on the premises 113 East 65th Street, made in 1925 by Charlotte L. Frelinghuysen. She died on July 18, 1930, leaving a will

admitted to probate on October 3, 1930, under which plaintiff was appointed and qualified as executor. Her estate was more than sufficient to pay all the specific legacies, taxes and expenses of administration and also the indebtedness on the decedent's bond. She devised the house and lot mentioned to the defendant Frederick T. Frelinghuysen, who, on October 27, 1930, conveyed the same to his wife, Katherine Frelinghuysen.

On February 16, 1932, defendants executed and delivered to plaintiff the instrument in respect to which this suit is brought, sometimes referred to as the " collateral bond ". It was a formal document under seal. It began by declaring that the makers of the instrument, the defendants herein, " hereby acknowledge that they are jointly and severally justly indebted " to plaintiff in the sum of $50,000 " which sum the obligors hereby covenant to pay to the obligee on demand with interest thereon " from October 1, 1931, at 5% " to be paid on the first day of April next ensuing and semi-annually thereafter."

The instrument then recited that all the provisions of " the said mortgage " are made part of the instrument and, in the next paragraph, that it was given as collateral security for the mortgage of 1925 before referred to. Thereafter interest on the mortgage debt was regularly paid by the defendants to April 1, 1939, since which date no interest has been paid; also, default was made in payment of the first half of the 1939–1940 taxes.

Plaintiff, seeking to obtain payment from defendants of the unpaid interest, and repayment to it of any taxes it might pay, brought an action for a declaratory judgment by which it sought to establish that, by bringing an action or obtaining judgment for interest and unpaid taxes, it would not be precluded from thereafter maintaining an action for the principal or to recover any future unpaid interest or taxes, or to foreclose the mortgage, and that its remedies under the bond and mortgage would remain in all respects unchanged. Defendants took the position that such an action as contemplated by the plaintiff would defeat a subsequent claim for principal and unpaid future interest and that, in any event, no consideration was given for the execution and delivery of the instrument. The judgment of Special Term which was affirmed by the Court of Appeals determined that the bond in suit was executed and delivered by the defendants for a valuable consideration and that it was effective as a covenant of assumption.

Its rights having been declared under the decision of the Court of Appeals in the prior action (288 N. Y. 463), plaintiff instituted this action to recover pursuant to the terms of the bond. The question here presented, which was not before the Court of Appeals, is whether the defendants are primarily liable or liable only secondarily.

The moving affidavit sets forth that no interest has been paid since April 1, 1939; that by the terms of the original mortgage Charlotte L. Frelinghuysen covenanted and agreed that she would keep the buildings on the premises insured against loss by fire for the benefit of the mortgagee and that the mortgagor would pay all taxes, assessments or water rates. It was then averred that since the defendants, by the terms of the bond, assumed the obligations of the mortgage, they were liable for the payment of interest, insurance premiums, taxes, assessments or water rates. The amounts of those payments are set forth and the defendants' only answer concerning them is that they have no knowledge or information to form a belief as to the amounts alleged to have been paid.

In opposition to the motion for summary judgment and in support of the cross motion for summary judgment, the defendants set forth that by obtaining the bond in suit as a " collateral bond " plaintiff acknowledged and contracted that the bond was merely collateral to the principal bond given plaintiff by the mortgagor — in other words, " that, as far as the bond in suit was concerned, the relationship of the defendants to the principal obligation was merely that of sureties * * *. It (plaintiff) asked for and got a ' collateral bond '. It could not thereafter convert that bond into or substitute it for, the principal bond, especially since it, as a creditor of the estate, had, as between itself and the defendants, the power and the means to enforce the principal bond before resorting to the collateral bond." Thus it is contended by the defendants that since no resort has been had by the plaintiff to the estate of the original mortgagor, plaintiff has lost its right to recover in this action, or, if it has any such right, that such recovery would be offset by a claim of equal extent in favor of defendants — the theory being that the mortgagor's estate, and not the devisee (the defendants herein) who have expressly assumed this payment, is alone liable for the mortgage debt.

The question, therefore, presented for disposition on these motions is whether, by their execution of the bond here sued on, the defendants became sureties only and not principal debtors and if they are sureties, whether they are exonerated because

plaintiff should have resorted to the estate of the original mortgagor for payment of the debt.

Under section 250 of the Real Property Law, as between Charlotte L. Frelinghuysen's estate and her devisee, the latter took the devise, and, if he chose to accept it, charged with the mortgage. That section reads (before the subsequent amendment of 1937, not applicable because not then in existence and not in any way limiting its scope but rather extending it): "Where real property, subject to a mortgage executed by any ancestor or testator, descends to an heir, or passes to a devisee, such heir or devisee must satisfy and discharge the mortgage out of his own property, without resorting to the executor or administrator of his ancestor or testator, unless there be an express direction in the will of such testator, that such mortgage be otherwise paid."

In the will of Charlotte L. Frelinghuysen there is no direction or suggestion, express or implied, that the mortgage be paid otherwise than by her devisee. Section 250 of the Real Property Law is not at all decisive of the question here presented. It should, however, be considered in connection with the bond executed by these defendants.

By that bond the defendants, by their express contract under seal for a valuable consideration, covenanted to pay the debt and to remain primarily liable therefor. The defendants thus became the principal debtors and the mortgagor's estate thereafter occupied the position of surety. By the assumption agreement, the mortgagee receives collateral security for his mortgage; instead of being fortified only by the personal obligation of the mortgagor he has a new principal debtor and does not release the obligation of the original mortgagor. As between the grantee and the mortgagee this added security for the mortgage debt is correctly described as collateral security, for it is collateral in its origin. It is not a matter of primary importance to the mortgagee which of his debtors is principal and which is surety, but as between the mortgagor and the grantee or devisee, the law has long fixed and recognized their relative obligations. "The defendant's acceptance of the deed with its assumption clause made her a covenantor as if an express agreement had been given. (*Bowen* v. *Beck*, 94 N. Y. 89.) By force of that covenant she became the principal debtor for the amount secured by the bond and mortgage, and bound to pay it in exoneration of plaintiff, the obligor in the bond, he standing merely as her surety for the debt. (*Comstock* v. *Drohan*, 71 N. Y. 12.)" (*Fairchild* v. *Lynch*, 99 N. Y. 359, 365.)

Defendants urge that the reference to the bond as collateral security indicated that their obligation was secondary and not primary. I do not so read the instrument. Plaintiff held the original bond of the decedent representing an indebtedness still unpaid. It was its primacy in time that made it the original bond and, as long as it remained unpaid, any other obligation, or any other security, received to secure the same outstanding debt would be new, additional, collateral security — security running alongside of and parallel with the original indebtedness.

The meaning of the word " collateral " is revealed in its etymology. It is something alongside of, running along, parallel with something else. It is of course precisely applicable to a surety bond, but it is no less applicable, so long as the original debt remains unpaid, to a new and separate obligation which has become the principal obligation.

In the Oxford Dictionary (Murray, 1893) some of the definitions of " collateral " are: " situated &ast; &ast; &ast; or running side by side, parallel ", " co-ordinate &ast; &ast; &ast; corresponding ", " collateral security, any property or right of action, given as additional to the obligation of a contract or the like ".

True it is that all or most suretyship contracts constitute collateral security, but it is by no means true that all collateral security constitutes a surety contract.

The familiar speech of men and the plain etymological meaning are in accord with the language of the courts. In *City Bank Farmers Trust Co.* v. *Ardlea Corp.* (267 N. Y. 224, 226), a mortgage case where defendant had assumed the mortgage, the Court of Appeals described the agreement of assumption as " an independent collateral agreement ". Being an independent covenant primary in its nature its contractual origin is recognized by the court as not inconsistent with its being " collateral."

Similarly, in *Newcomb* v. *Hale* (90 N. Y. 326, 331–332), the court uses the same term " collateral " in describing a contractual obligation founded upon a new and independent consideration. The court says (p. 332): " The engagement was collateral in form, but it was in substance an original undertaking, and an immediate right of action accrued thereon to the plaintiff, on the mortgage debt becoming due."

Even if we were to assign to the phrase " collateral security " a limited scope making it the equivalent of " subsidiary ", contingent " or " not direct or primary " — a limitation not justified in the light of its etymology and recognized use — this choice of an inappropriate adjective to characterize an instru-

ment constituting on its face a direct and primary obligation could not alter the plain contractual obligation. As defendants covenanted directly with the creditor that they themselves were indebted to him, that they themselves would pay the debt and that they themselves should remain " primarily liable " for its payment, the choice of an adjective used to characterize the instrument could not alter the effect of the instrument's express terms of direct and primary obligation.

The cases relied on by the defendants are not here applicable. In *Honeyman* v. *Hanan* (275 N. Y. 382) the bond was wholly different from the Freylinghuysen bond. It was given not by any owner of the property covenanting to make the debt primarily his own, but on the contrary was on its face a simple contract of guarantee or suretyship. The bond, quoted at length in the opinion, was in the familiar form used every day for surety undertakings on appeal. It acknowledged the makers' obligation in the penal sum, and then declared the condition of the undertaking to be that if the original mortgagors — described as " the parties bound to pay the mortgage " — should pay the outstanding mortgage bond, the surety bond should be void; otherwise to remain in full force and virtue. Its effect was of course precisely what it would have been had the obligors covenanted or guaranteed that the original mortgagors — " the persons bound to pay the mortgage debt," as the surety bond correctly described them — would pay the outstanding debt.

But even on this entirely different state of facts, there is no discussion in *Honeyman* v. *Hanan* (*supra*) of whether the maker of the bond there involved was a principal or a surety. The only question was whether its obligation was that of a new undertaking for a new debt independent of the mortgage debt, or on the other hand was really founded on the original mortgage debt and therefore subject to the deficiency judgment statute. If it were the latter, it was of no consequence whether it were the liability of a principal or of a surety. In either case the deficiency judgment statute was a bar to plaintiff's action, and there is no discussion in the opinion as to whether the personal obligation of the maker of the new bond were that of a principal or a surety, for that of a surety or guarantor it manifestly was.

Furthermore, it will be observed that what Hanan undertook was not as the Frelinghuysens covenanted here, that he himself covenanted and agreed to pay the mortgage debt, but that the original obligors — " the persons bound to pay the mortgage,"

as they were described in the new bond — would pay it. It was, as the court pointed out, "not a bond by which the obligors assumed a primary obligation to repay a loan" (p. 389), and that is what, on the contrary, the bond in the present case was expressly and specifically declared by its makers to be, a covenant to pay an obligation recited as their own indebtedness, for which they themselves were "primarily liable."

*Bulkley* v. *Shaw* (289 N. Y. 133) concerned only the application of the Statute of Frauds. The question presented was whether the oral promise sued on was one to answer for the debt, default, or miscarriage of another and thus declared unenforcible by the statute, or on the contrary was an independent undertaking. The guaranteed debt was incurred in financing a business concern. The court found it quite clear that as between the original debtor and his guarantor the debt was one that the original debtor was bound to pay. As the court stated, citing Williston on Contracts: "If, as between the promisor and the original debtor, the promisor is bound to pay, the debt is his own and not within the statute" (p. 138 *ad fin.*).

In the present case, as between the defendants (the promisors) and the mortgagor's estate (the original debtor) it was indubitably the former that were bound to pay, for the Frelinghuysens explicitly covenanted and agreed to pay and they should remain "primarily liable" therefor.

The other cases cited by the defendants in no way affect the conclusion here reached.

No point is made in the briefs that there is a triable issue with respect to the amount due if liability has been established. It is unnecessary, therefore, to order an assessment of damages.

Accordingly, summary judgment is directed in favor of the plaintiff. Execution stayed twenty days. Settle order.