JAMES EMPLOYEES CREDIT UNION, Appellant, vs. HAWLEY, Defendant: SCHNEIDER, Respondent.

*December 2, 1957—January 7, 1958.*

For the appellant there was a brief by *Hobe & Lampert* of Fort Atkinson, attorneys, and *Robert J. Gunnis* of Milwaukee of counsel, and oral argument by *Mr. John L. Lampert* and *Mr. Gunnis.*

For the respondent there was a brief by *Bernard Goldstein* of Whitewater, attorney, and *Gerald L. Bass* of Milwaukee of counsel, and oral argument by *Mr. Goldstein* and *Mr. Bass.*

STEINLE, J. A promissory note for $801.07 dated September 14, 1954, was given by the defendants to the plaintiff in consideration of a loan for such sum by the plaintiff to the defendant Hawley. The note was signed by Marion Hawley as "Maker" and by Dr. Frank W. Schneider as "Comaker." After having been induced by Hawley to sign the note and before signing it, Dr. Schneider communicated with a representative of the plaintiff Credit Union and learned that payments would be made by pay-roll deductions from Hawley's wages at the rate of $20 per week. Hawley terminated his employment with James Manufacturing Company on or about December 31, 1954. He defaulted in payments on the note on March 28, 1955. On April 21, 1955,

Hawley requested the plaintiff to extend the time for payment. Such extension was granted until June 1, 1955, on condition that he pay $40 then, and a like sum each month thereafter until the obligation was satisfied. After the plaintiff had agreed with Hawley for the extension of time for payment, its treasurer sent a letter on May 12, 1955, to Dr. Schneider advising him of Hawley's request for the extension of time and as to its action in having granted such request. Dr. Schneider had not theretofore been aware of Hawley's negotiations with the plaintiff for an extension of time of payment. He had not consented to the extension arrangement. He made no response to the letter. The note was not paid on the extended due date. Cognovit judgment was entered against both defendants in the sum of $512. After the cognovit judgment had been reopened, Hawley did not appear in the action.

In its decision the trial court pointed out that sec. 186.09, Stats., provides that all loans to an individual member by a credit union exceeding $500 shall be secured by such collateral as the credit committee shall approve. The court interpreted the term "collateral" as used in the statute, to mean more than the signature of a comaker, accommodation maker, surety, or guarantor. It held that the term implied the pledging of some tangible or intangible property, in the nature of bailment, to insure payment of the loan. It declared that Dr. Schneider was entitled to assume that the plaintiff had secured a pledge of property from Hawley,—the loan being in excess of $500,—and that had such been done, Dr. Schneider would have been entitled to subrogation in the event he was compelled to pay the note. The court concluded that plaintiff violated sec. 186.09 by not exacting a pledge of property as collateral.

The trial court also determined that there was ambiguity with reference to the status of Dr. Schneider as a signer of

the note, and that pursuant to the provisions of sec. 116.21(6), Stats., he was to be deemed an indorser thereof. The court also held that the agreement between the plaintiff and Hawley for an extension of time for payment of the note constituted an unauthorized alteration in the note as to Dr. Schneider, and that, as a consequence, being an indorser of the note, Dr. Schneider was relieved of all liability to the plaintiff.

It is the position of the plaintiff on this appeal that (a) Dr. Schneider was an accommodation maker and that there is no ambiguity as to his status so as to justify a finding that he was an indorser as provided in sec. 116.21 (6), Stats.; (b) that since the legal issue as to whether the signature of Dr. Schneider as an accommodation maker was "collateral" within the meaning of that term as it is used in sec. 186.09, Stats. 1953, in relation to loans of $500 or more, had not been raised and properly presented for review in the trial court, it cannot be raised for the first time here. In the alternative, however, and notwithstanding such position, the plaintiff contends that Dr. Schneider's participation in the note as an accommodation party was "collateral" within the purview of said statute; (c) the agreement between Hawley and the Credit Union for an extension of time of payment of the note was not a material alteration within the meaning of secs. 117.42 and 117.43, Stats. 1953, so as to relieve Dr. Schneider of liability.

Sec. 116.21, Stats. 1953, provides in part:

"Where the language of the instrument is ambiguous, or there are omissions therein, the following rules of construction apply: . . .

"(6) Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an indorser."

This provision was construed in *Germania Nat. Bank v. Mariner* (1906), 129 Wis. 544, 547, 109 N. W. 574. It was there said:

"This provision, by its very terms, applies only to a case of doubt arising out of the location of the signature upon the instrument. Names are sometimes placed at the side, on the end, or across the face of the instrument, and thus a doubt arises as to whether the signer intended to be bound as a maker or an indorser, or perhaps as a guarantor, and to solve these doubts the section in question was evidently framed. It was to settle a doubt fairly arising from the ambiguous location of the name, and applies to no other."

For similar rulings see also 5 U. L. A. (Part 1), Uniform Negotiable Instruments Act, p. 198, sec. 17 (V), note 121.

In the case at bar the form of the note was printed. The signature "Frank W. Schneider" appears at the foot of the note opposite the printed word "Comaker" which appears immediately below the printed word "Maker" and after which the signature "Marion Hawley" is written. In a space to the left of such designations and signatures appear the signatures of three other persons written immediately below the printed word "Witness."

The trial court's finding of ambiguity was predicated upon evidence that Dr. Schneider was not a borrower of the funds covered by the note; that the loan was made to Hawley; that the note did not carry a designation of "accommodation maker" or "surety" in connection with Dr. Schneider's signature; that Dr. Schneider had not known the difference between primary and secondary liability on the note, nor the liability of an accommodation maker or indorser thereof.

Sec. 186.01, Stats. 1953, provides that a credit union may only loan its funds to its members. However, it does not appear that there is any provision in the statutes prohibiting a person not a member to become an accommodation maker of a note given for a loan to a member who is a maker of the note.

An accommodation maker is one who has signed the instrument as maker without receiving value therefor, and for

the purpose of lending his name to some other person. He is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party. Sec. 116.34, Stats. 1953.

In *Marling v. Jones* (1909), 138 Wis. 82, 87, 119 N. W. 931, it was said:

"No consideration moving to the accommodation maker is necessary to uphold an accommodation note. The very name of the paper suggests this. The consideration in such case which supports the promise of the accommodation maker is that parted with by the person taking the accommodation note and received by the person accommodated."

One who signs a note as a comaker, to accommodate a maker, assumes the primary obligation as to the payee, and is a comaker rather than a surety. *Rosendale State Bank v. Holland* (1928), 195 Wis. 131, 217 N. W. 645; *Bosworth v. Greiling* (1934), 213 Wis. 443, 250 N. W. 856. See also 11 C. J. S., Bills and Notes, pp. 289, 290, sec. 739 b.

Sec. 116.21 (6), Stats. 1953, *supra,* does not refer to an ambiguity of intention of the signing party as to his liability on the instrument. In the case at bar the note by its terms conclusively establishes that Dr. Schneider was a comaker. The evidence reveals that he accommodated Hawley in such capacity. It appears without dispute that the plaintiff Credit Union was a holder for value. We are obliged to determine that under provisions of sec. 116.34, Stats. 1953, *supra,* Dr. Schneider was primarily liable to the plaintiff as an accommodation maker.

The plaintiff has challenged the action of the defendant Schneider in presenting to this court the issue of illegal collateral. It contends that such issue was not raised by the pleadings, nor was it presented for consideration upon the trial. The plaintiff submits further that the matter origi-

nated with the trial court when deciding the cause, and that no opportunity was afforded to contest it. Both parties, however, by brief and oral argument here presented their views with respect to the matter. The trial court's conclusion of law in relation thereto was based upon facts of record. It appears without dispute that the note in question was for an amount in excess of $500. Sec. 186.09, Stats., requires that loans in excess of $500 by credit unions to its members shall be secured by collateral. Ordinarily questions not raised and properly presented for review in the trial court will not be reviewed upon appeal. However, there are exceptions to such rule. *Cappon v. O'Day* (1917), 165 Wis. 486, 162 N. W. 655; *Braasch v. Bonde* (1926), 191 Wis. 414, 211 N. W. 281. For instance, it has been determined that questions as to the legal effect of a deed or other instrument may be raised for the first time in this court. *Hartung v. Witte* (1884), 59 Wis. 285, 18 N. W. 175, and *Nightingale v. Barens* (1879), 47 Wis. 389, 2 N. W. 767. The matter at bar is within the exceptions to the rule, and we are aware of no valid reason for not determining the question of law presented.

We are of the opinion that the term "collateral" as it appears in the provision of sec 186.09, Stats. 1953, that "All loans [by a credit union] to an individual member exceeding $500 . . . shall be secured by such collateral as the credit committee shall approve," is to be considered in a generic rather than a limited sense. Collateral security, in bank parlance, means some security additional to the personal obligation of the borrower. *Connelly v. Wells* (1955), 142 Conn. 529, 534, 115 Atl. (2d) 444, 447; *Black's Law Dictionary* (4th ed.), p. 327; *Barbin v. Moore* (1932), 85 N. H. 362, 374, 159 Atl. 409, 415, 83 A. L. R. 62; *Smith v. Coleman* (1945), 184 Va. 259, 270, 35 S. E. (2d) 107, 112, 160 A. L. R. 1376; *Edward P. Allis Co. v. Madison*

*E. L., H. & P. Co.* (1897), 9 S. D. 459, 465, 70 N. W. 650, 652; *D. M. Osborne & Co. v. Stringham* (1894), 4 S. D. 593, 598, 57 N. W. 776, 778; *Shoemaker v. National Mechanics' Bank* (1869), 21 Fed. Cas. 1331, 1334.

In the case of *In re Waddell-Entz Co.* (1896), 67 Conn. 324, 334, 35 Atl. 257, 258, it was said:

" 'Collateral security' necessarily implies the transfer to the creditor of an interest in some property or lien on property, *or obligation which furnishes a security in addition to the responsibility of the debtor."* (Italics supplied.)

In *United States Trust Co. v. Frelinghuysen* (1944), 183 Misc. 205, 210, 49 N. Y. Supp. (2d) 54, 57, the court, when considering the etymology of the term "collateral," stated that:

"In the Oxford Dictionary (Murray, 1893) some of the definitions of 'collateral' are: 'situated . . . or running side by side, parallel,' 'co-ordinate . . . corresponding,' 'collateral security, any property *or right of action,* given as additional to the obligation of a contract or the like.' " (Italics supplied.)

From a consideration of the above authorities it is plain that while a pledge of property may serve as collateral for a loan, the obligation of a person who is not the borrower to become liable with the borrower for the repayment of the loan, is also "collateral." The fact that the one who is not the borrower commits himself to a primary rather than to a secondary responsibility for the repayment of the loan, does not derogate the collateral characteristic of the transaction. See *United States Trust Co. v. Frelinghuysen, supra.*

Prior to 1953 sec. 186.09, Stats., provided that all loans by a credit union exceeding $100 shall be secured by such collateral as the credit committee shall approve, or shall be guaranteed by one or more persons whose responsibility is acceptable to the credit committee. The statute also pro-

vided that when authority was granted by the banking commission, credit committees could properly make loans up to $300 without collateral. In 1953 the legislature by ch. 132, sec. 6, repealed and re-created sec. 186.09. In so far as material, the section thereafter provided that: "All loans to an individual member exceeding $500 . . . shall be secured by such collateral as the credit committee shall approve."

The defendant Schneider contends that by deleting the provision with reference to guaranty of the loans by one or more persons whose responsibility would be acceptable to the credit committee, the legislature intended that collateral was to be more than a "signature" of a third person. Careful examination of the legislative history of the change of this section of the statutes does not reveal such intention. It rather appears that the phraseology was deemed surplusage, and that the signature of one, considered responsible by the committee, to the note of a borrowing member, was in the category of collateral as contemplated by the statute. We are impelled to the conclusion that the obligation of Dr. Schneider as comaker of the note was collateral within the meaning of sec. 186.09, Stats. 1953.

The trial court concluded and adjudged that the act of the plaintiff in granting an extension of time for payment by the defendant Hawley constituted an unauthorized alteration of the note, and that as a consequence the defendant Schneider was entitled to be relieved from liability thereon.

Sec. 117.42, Stats. 1953, provides in part:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented, orally or in writing, to the alteration. . . . But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment."

Sec. 117.43, Stats. 1953, provides in part:

"Any alteration which changes: . . .
"(3) The time or place of payment; . . . or any other change or addition which alters the effect of the instrument in any respect, is a material alteration."

An alteration of an instrument is a change in the instrument by a party thereto, or one entitled thereunder, or one in privity with such a person, after the instrument has been signed or fully executed, without consent of the other party to it, by an erasure, interlineation, addition, or substitution of material matter affecting the identity of the instrument or the rights and obligations of the parties. See 3 C. J. S., Alteration of Instruments, p. 904, sec. 1; 2 Am. Jur., Alteration of Instruments, pp. 596, 598, 600, secs. 1, 6, 7.

Nowhere on the instrument in question is there mention of any change as to extension of time for payment. In *Strehlow v. Planinger* (1929), 198 Wis. 525, 224 N. W. 742, this court held that an indorsement on the back of a note relating to an extension of time from the date of maturity was not an alteration of the instrument which entitled the surety to a release of his obligation. In that case this court stated (p. 526):

"In order to constitute an alteration there must be some change, or erasure, or interlineation in the paper writing constituting the evidence of the contract so as to make it another and different instrument and no longer evidence of the contract which the parties made. *Cambridge Sav. Bank v. Hyde*, 131 Mass. 77, at p. 78. In that case it was claimed a memorandum appearing on the back of the note reading, 'rate of interest to be 6½% from October 10, 1876,' constituted a material alteration of the note rendering the same void. The court held that the memorandum did not constitute an alteration of the note. The original note remained intact. The identity of the note as indicating the contract between the parties was not destroyed. The court said: 'The memorandum on the back is evidence of an independent col-

lateral agreement and has no more effect than if it had been written on a separate paper.'" See also *Cresco Union Savings Bank v. Terry & Terry* (1926), 202 Iowa, 778, 211 N. W. 228.

In *Blank v. Michael* (1929), 208 Iowa, 402, 403, 226 N. W. 12, 13, 222 N. W. 385, a separate agreement was made extending the time of payment of a mortgage and a note secured thereby. The court said:

"The mortgagors further contend that the extension agreement operated as a material alteration of the note and mortgage sued upon, and therefore invalidated them. This contention is untenable."

In *Elkhorn Production Credit Asso. v. Johnson* (1947), 251 Wis. 280, 29 N. W. (2d) 64, a father signed a note as an accommodation maker for his son, with the knowledge of the payee and holder thereof. As additional security for the note, the son gave to the payee a chattel mortgage on certain farm machinery, including a tractor. Over objection of the father, the payee released the lien of the mortgage on the tractor. When the note became due the son defaulted in payment. The payee sued the father. In defense, the father asserted the release of the lien of the mortgage on the tractor and claimed discharge of liability on the note as to himself by virtue thereof. The issue of alteration was not raised. It does not appear that any memorandum of permission to the son to withdraw the tractor from the lien of the mortgage was stated on the note. On the basis that the father was not an indorser, but was in fact an accommodation maker, it was held that he was not entitled to discharge.

Sec. 117.38, Stats. 1953, provides in part that:

"A person secondarily liable on the instrument is discharged: . . .
"(4a) By giving up or applying to other purposes collateral security applicable to the debt, . . .

"(6) By an agreement binding upon the holder to extend the time of payment, . . ."

In the matter before us the defendant Schneider was an accommodation maker, and hence was primarily liable on the note. Persons primarily liable on an instrument are "absolutely required to pay the same" sec. 116.01 (14), Stats. 1953. There is no statute similar to sec. 117.38, discharging persons primarily liable on an instrument when an agreement for an extension of time for payment is granted, whether memorandum thereof appears on the instrument, or not. Since the arrangement between the Credit Union and Hawley for an extension of time for payment was not stated upon the face of the instrument, it cannot be held that there was an alteration of the instrument.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in favor of the plaintiff against the defendant Schneider for the amount due upon the note.

FAIRCHILD, J. (*concurring*). I concur in all respects except that in my opinion it is immaterial whether the signature of the comaker constituted collateral. The law requiring that there be collateral is for the protection of the funds of the Credit Union and its members. Failure of the officers to insist upon collateral other than the signature of a comaker should not permit the comaker to escape liability even if his signature was not all that the law required.

I have been authorized to state that Mr. Chief Justice MARTIN joins in this concurring opinion.