FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE, Appellant, vs. PIERCE, Respondent.

*January 11.—May 17, 1938.*

582

584

For the appellant there were briefs by *Corrigan, Backus, Sullivan & Backus* of Milwaukee, and oral argument by *W. G. Sullivan.*

For the respondent there were briefs by *Peterson & Slocumb* of Menomonie and *Grady, Farnsworth & Walker* of Portage, and oral argument by *Dorothy Walker* and *Daniel H. Grady.*

The following opinion was filed March 15, 1938:

MARTIN, J. The several demurrers may be considered collectively. The defense and counterclaims are based upon the fact that the plaintiff did not sell the pledged stock immediately upon the restrictions being raised on the sale of Bankshares stock July 1, 1930, at which time said stock sold at $11 per share. It appears that for many years prior to

January 1, 1930, defendant was president of the First National Bank of Menomonie; that he became one of the original subscribers to the Bankshares capital stock, and upon its organization in 1929 was elected to its board of directors. He continued to act in that capacity until January 2, 1935. According to the dates and allegations alleged in defendant's counterclaims, all of the alleged acts of negligence, concealment, omissions, and occurrences, upon which the counterclaims are based, had taken place by the end of July, 1930. At that time defendant owed the plaintiff $60,000. Thereafter, he borrowed an additional $30,000 and pledged additional securities. The $60,000 loan was first made on October 2, 1929. The $30,000 loan was first made on October 5, 1930. Both notes were thereafter renewed, from time to time, at intervals of three or four months. The $60,000 note did not mature during the month of July, 1930. It had matured on May 5th, but was renewed for a period of four months, thus maturing in September, 1930, and was thereafter renewed from time to time; the last renewal being on September 5, 1933.

The case of *First National Bank v. Hattaway,* 172 Ga. 731, 158 S. E. 565, 77 A. L. R. 375, is quite applicable to the facts in the instant case. There the debtor delivered to the bank cotton to secure certain loans. The loans were renewed from time to time. The notes were the ordinary form of collateral note. After the notes matured, the debtor demanded that the bank sell the cotton at a time when enough would have been realized to pay off the loan and leave a surplus to the debtor. Notwithstanding the plaintiff's several demands, the bank failed to sell the cotton for a period of one and one-half years after the maturity of the notes, and when the cotton was sold, the proceeds were insufficient to cover the amount of the loans. The debtor brought suit against the bank for damages. The case was

dismissed on demurrer to the complaint. The court said (quoting from 77 A. L. R. 377) :

"Neither at common law nor under the statutes of this state, in the absence of contract, is the holder of collateral bound to sell it, though he may have the right to sell it, under certain conditions, by giving notice as required by statute. As a matter of law, a pledge of chattels is a mere security for the obligation that the pledgor would pay the debt. The pledgee may sell the collateral in order to protect himself, if he deems it wise to do so, after compliance with the statute as to notice, etc., or in the exercise of special contractual power. *But he is not obliged to sell the collateral to satisfy the debt in whole or in part, even upon the demand of the pledgor. The pledgee may look solely to the promisor, and may proceed against him on his promise, without exhausting the collateral.* The creditor may sue on the note and obtain an ordinary common-law judgment, without exhausting the security. The property pledged, the chattel in the present case, is merely security for the debt."

And at page 379, 77 A. L. R., in connection with an exhaustive annotation, citing cases from eighteen jurisdictions, the rule is stated thus :

"A pledgee, though generally entitled to do so, is not ordinarily bound on the pledgor's default to sell the thing pledged, but may sell or not at his option. If he does not see fit to sell, he may continue to hold the subject of the pledge as security for the debt." To the same effect, see 21 R. C. L. p. 689, § 49; 49 C. J. p. 948, § 98, p. 997, § 247.

The respondent, in support of his contention that a request to the pledgee to sell is sufficient to require it to do so, either before or after maturity of the notes, cites the annotation in 51 A. L. R. at page 620, and the cases there cited. It should be noted that this annotation, commencing at page 609, relates to the duty of a pledgee of commercial paper as to its enforcement or collection. The annotation and citations are not applicable to the facts in the instant case, the

subject of the pledge being entirely different. The cases relied upon by respondent go to the proposition that where the subject of the pledge is promissory notes or other maturing obligations during the existence of the pledge, in such event it is the duty of the pledgee of such collateral to use ordinary diligence in collecting, or to bring suit, if necessary, to toll the statute of limitations, and so forth.

It is alleged that a fiduciary relationship existed between plaintiff and defendant; that defendant advised plaintiff that he desired to sell the collateral as soon as it was released for sale on or about July 1, 1930. No request or demand which defendant might have made for a sale of the collateral prior to the maturity of the notes would obligate plaintiff to sell the collateral. The deposit agreement is the contract between the parties and binding upon both. The plaintiff's authority to sell existed only after default by defendant. There was no default by defendant at any time during the period during which it is now claimed plaintiff should have sold the collateral.

". . . The contract of pledge may make it the duty of the pledgee to sell within a specified time, and his failure to do so is then such breach of duty as will render him answerable to the pledgor. *In the absence of such contract, however, the pledgor cannot make it the duty of the pledgee to sell merely by requesting or directing him to do so.*" 21 R. C. L. p. 689, § 49, and cases cited under note 10.

The facts alleged in the answer and counterclaims do not disclose a fiduciary relationship between the plaintiff bank and defendant. The defendant was a stockholder and director of the Wisconsin Bankshares Corporation. The alleged statements made by Mr. Kasten, as to the value of Bankshares stock, were an expression of his opinion. However, any statement in that regard or as to the alleged advice given defendant concerning his personal and banking busi-

ness affairs, whether good or bad advice, could create no liability as against plaintiff bank. In *De Swarte v. First Nat. Bank,* 188 Wis. 455, 475, 206 N. W. 887, the court said:

"In order to prevent bank failures and the disastrous consequences which follow them, legislators and the courts unite in the effort to confine banks and their officers within the field of their legitimate powers. . . . If banks were to be held liable for the advice or even the unauthorized false statements of their cashiers or other agents concerning investments which from their very nature are more or less speculative, a new and very serious peril would be added to the banking business. Such a policy would tend to increase the number of bank failures, already far too frequent, and also to increase the losses to depositors and other customers of banks to the detriment of the general public."

In 7 Michie, Banks and Banking, p. 200, § 154, the author says:

"The United States statutes relative to national banks constitute the authority of such banks, and they cannot rightfully exercise any powers except those expressly granted or which are incidental to carrying on the business for which they are established. . . . 'The business of banking' is defined to consist of discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt; receiving deposits, buying and selling exchange, coin and bullion, lending money on personal security, and obtaining, issuing, and circulating notes; and to those specified powers and those necessary to the exercise of the powers expressed the bank must confine its operations, *and acts of officers not embraced in the terms of the law are not binding upon the corporation.* Of these powers, under the statutes providing for their creation, everyone must take notice." Citing *Lemke v. First National Bank,* 190 Wis. 223, 208 N. W. 946; *Logan County National Bank v. Townsend,* 139 U. S. 67, 11 Sup. Ct. 496; *California Bank v. Kennedy,* 167 U. S. 362, 17 Sup. Ct. 831; *First National Bank v. State of Missouri,* 263 U. S. 640, 44 Sup. Ct. 213. See also cases cited 12 USCA, § 24, note 85.

The answer denies that payment was demanded prior to the commencement of suit. No demand was necessary. See sec. 116.75, Stats.; *Schoenwetter v. Schoenwetter,* 164 Wis. 131, 135, 159 N. W. 737.

The answer denies "that any sum is due or unpaid upon either note. Alleges that the notes were 'paid in full prior to the commencement of this action, such payment having been made in the form and manner set forth in the first and second counterclaims, hereinafter set forth.'" By reference both counterclaims are made a part of the answer. Ordinarily an allegation of payment would prevent a demurrer to the pleading. However, the answer here sets forth facts by reason of which it is claimed the notes in question were paid and discharged. After a very careful study of the facts and the authorities cited, we are of the opinion that the answer fails to show any defense and the counterclaims wholly fail to state any cause of action. It follows that the plaintiff's demurrer to the answer and the several demurrers to both counterclaims should have been sustained. In view of the conclusion reached, it is not necessary to consider the separate demurrers to each of the counterclaims on the ground that same were not pleadable as counterclaims.

The defendant asks for a review of the order striking certain portions of the counterclaims. The order struck out paragraphs 12 and 17b of the first counterclaim. Paragraph 12 alleged that the First Wisconsin Company was a unit of Bankshares and the identity of its directors and those of plaintiff bank. Paragraph 17b refers to the negligence of plaintiff bank in selling collateral of other debtors at a time when it neglected to sell the Pierce collateral. The court struck out paragraph 5 of the second counterclaim, which was the same as paragraph 17b of the first counterclaim; also struck certain portions of paragraph 17c of the first counterclaim and 5d of the second counterclaim.

These paragraphs contained the allegation that on July 28, 1930, Bankshares entered into an agreement with the First Wisconsin Company to buy sixty-six thousand two hundred sixteen shares of Bankshares stock at $10 per share., There is no appeal from the order striking said allegations. The allegations were struck as being irrelevant and redundant. The order is not appealable. See *Gilbert v. Hoard*, 201 Wis. 572, 573, 230 N. W. 720.

A few additional facts seem pertinent in connection with the plaintiff's motion for summary judgment. The defendant in his affidavit opposing the motion for summary judgment says:

"When said $60,000 and $30,000 were borrowed, and when the notes were subsequently renewed, it was agreed between affiant and plaintiff's president that affiant could pay said notes at any time, regardless of their maturity."

No such fact is alleged in the answer or either counterclaim. If we assume such agreement was made, the effect would be to vary the terms of the notes which are absolute on their face. No evidence of a verbal agreement made at the same time or prior thereto qualifying the terms of the notes can be admitted or considered in evidence. *Shea v. National Bank of De Pere*, 212 Wis. 626, 250 N. W. 424, and cases cited. Defendant claims he did not discover the facts on which his counterclaims are based until March 13, 1934. He was examined as an adverse party, said examination being a part of the record on the motion for summary judgment:

"*Q.* And you kept on renewing these notes and put up the additional collateral in the form of the Pierce stock with the intention that if you were ever sued on the notes you were going to claim these offsets in more than the amount of the loan, is that right? *A.* I think you could say that, yes.

"*Q.* Well, that is correct? *A.* Yes."

It clearly appears that the defendant knew at all times from the early part of 1930, and prior to the execution of the renewal notes thereafter, of the facts upon which his defense and counterclaims are based. So, regardless of the merits, if any, we would have to hold, as a matter of law, that he has waived same. *Bosworth v. Greiling*, 213 Wis. 443, 250 N. W. 856; *German Nat. Bank v. Barber*, 159 Wis. 109, 149 N. W. 767; *Holbeck v. Southside Malleable Casting Co.* 220 Wis. 399, 264 N. W. 834.

It would serve no useful purpose to quote from the voluminous correspondence between the defendant and the plaintiff bank relative to the renewals of the two notes. This correspondence and the defendant's testimony on his adverse examination conclusively demonstrate the lack of merit of his defense and in the counterclaims interposed.

*By the Court.*—The order overruling plaintiff's demurrers to the defendant's answer to the first and second cause of action as not alleging facts sufficient to constitute a defense, and the orders overruling the plaintiff's separate demurrers to each counterclaim for the reason that they do not state causes of action, are reversed. The order denying plaintiff's motion for summary judgment is reversed, and the cause is remanded with directions to enter an order sustaining the plaintiff's demurrer to the defendant's answer and to the counterclaims, and that an order be entered granting the plaintiff's motion for a summary judgment as prayed for.

A motion for a rehearing was denied, with $25 costs, on May 17, 1938.