IRVINE vs. ADAMS, imp.

*February 3 — February 24, 1880.*

PROMISSORY NOTES: EVIDENCE: SURETYSHIP: ESTOPPEL. *(1) Proof that apparent joint maker was merely surety. (2) Usurious agreements for extension and payments thereon, no release of surety. (3) Estoppel in pais.*

1. One who appears upon the face of a note to have signed it as a joint maker, may show by parol that the creditor knew, when the note was executed, that he was merely a surety, and has since, without his consent, extended time of payment to the principal.

2. Successive agreements by the payee of a note to extend time of payment to the principal for a usurious consideration, with successive payments,

*after the expiration* of each time of extension, of the usury stipulated therefor, do not release the surety; there being no suspension of the payee's right to enforce payment of the note.

3. Where, upon the principal maker of a note compromising with a part of his creditors, including the surety, the latter treats the amount of the note as an existing obligation of the principal to him, he is estopped to deny his liability to the payee thereon, though the latter was not a party to the compromise.

APPEAL from the Circuit Court for *La Fayette* County.

This action was brought against Thomas H. Maynard, J. Lester Adams and *W. Thompson Adams*, on a promissory note executed by them in the following form: "APPLE RIVER, ILL., MAY 5, 1870. Twelve months after date we promise to pay to the order of *Samuel Irvine*, five hundred dollars, at ten per cent. per annum, value received.

"MAYNARD & ADAMS.
"W. T. ADAMS."

Only the defendant *W. Thompson Adams* answered; and his defense was that, at the request of the plaintiff and of his codefendants, he executed the note merely as a surety, and that plaintiff, on several different occasions, and in each case for a valuable consideration, had extended the time of payment of the note without his consent.

The issue was tried by the court without a jury, and the facts found were substantially as follows: 1. At the date of said note, Thomas H. Maynard and J. Lester Adams were copartners in trade doing business in Apple River, Ill., under the firm name of Maynard & Adams; the note was given by said firm in that state for money loaned by plaintiff to the firm; and *W. T. Adams* signed it merely as surety for the firm, as plaintiff well knew. 2. About the time the note matured, plaintiff entered into a contract with Maynard and J. Lester Adams, by the terms of which plaintiff agreed to extend the time of payment of the note one year, in consideration of which Maynard & Adams agreed to pay him $25 in addition to the interest stipulated by the terms of the note; and some time after

the expiration of the extended period they paid in fact one-half of said additional sum, plaintiff releasing them from payment of the other half. The note was further extended from year to year by agreement between plaintiff and said firm, the latter paying for such extension each year $12.50, " the sum agreed to be received therefor by the plaintiff," until the failure of the firm in 1875. *W. T. Adams* had no knowledge of such extensions until such failure. 3. In 1875, Maynard & Adams compromised with their creditors, paying them forty per cent. of their liabilities. " The note in suit was put in as a liability at such compromise, *W. T. Adams* consenting thereto; the firm paid forty per cent. of their liability upon the note; but neither the plaintiff nor *W. T. Adams* received any part of such payment or sum of money. The sum was taken by the defendant J. Lester Adams, he undertaking to pay the same to the plaintiff, but never doing it."

Upon these facts the court held that *W. T. Adams* was released from liability upon the note; and judgment was accordingly rendered in favor of said defendant, from which the plaintiff appealed.

*Henry S. Magoon*, for appellant:

It is the settled general rule, that parol evidence will not be admitted to add to, contradict or vary the terms of a written instrument. 1 Phillips Ev., 637, 665, 668; 1 Greenl. Ev., § 275; *Foster v. Clifford*, 44 Wis., 571; *Charles v. Denis*, 42 id., 56; *Strachan v. Muxlow*, 24 id., 26; 12 Wend., 573; 1 Cow., 249; 1 Hill, 116; 1 Denio, 400; 16 Wall., 566; 91 U. S., 291; 2 Parsons on Notes, 501; 42 Ill., 165; 9 Gray, 337; 7 Bosw., 366; 45 Barb., 214; and many other cases. The case at bar is within the rule. *Yates v. Donaldson*, 5 Md., 389; *Kritzer v. Mills*, 9 Cal., 21; *Bull v. Allen*, 19 Conn., 101; *Manley v. Boycot*, 2 Ell. & Bl., 46; *Strong v. Foster*, 17 C. B., 201; *Hollier v. Eyre*, 9 Clark & Fin., 45; *Price v. Edmunds*, 10 Barn. & Cress., 578; *Perfect v. Musgrove*, 6 Price, 111; *Farrington v. Gallaway*, 10 Ohio, 543; *Slipher v. Fisher*, 11 id.,

299; *Sprigg v. Bank of Mt. Pleasant,* 10 Pet., 265; 14 id., 206; 8 Wheat., 211; 1 Johns. Ch., 429; 6 Vesey, 328 and note; *Bank v. Dunn,* 6 Pet., 56; *Brown v. Wiley,* 20 How. (U. S.), 447; *Rockmore v. Davenport,* 14 Tex., 602; *Thompson v. Ketcham,* 8 Johns., 190. Though in fact a surety, respondent signed as principal maker, and is estopped to deny his liability as such. *Carver v. Jackson,* 4 Pet., 83; 1 Scam., 148; 21 Ill., 584; 1 Greenl. Ev., §§ 23–26; *Hunter v. Bryden,* 21 Ill., 591; *Daggett v. Gage,* 41 id., 465; *Casey v. Brabason,* 10 Abb. Pr., 368. 2. Mere delay, remissness or indefinite extensions by the creditor will not operate to release a surety; but, to have that effect, there must be a sufficient consideration and a time definitely fixed. *Harris v. Newell,* 42 Wis., 687; *Bellows v. Lovell,* 5 Pick., 310; *Frye v. Barker,* 4 id., 382; *Taylor v. Beck,* 13 Ill., 384; *Gardner v. Watson,* id., 347; *Flynn v. Mudd,* 27 id., 325; 34 id., 424; 2 Barr, 286; 12 Sm. & M., 535; 4 Leigh, 622. The only agreement for an extension pretended or testified to in this case, was founded upon a usurious consideration. An illegal contract for an extension will not release the surety. *Meiswinkle v. Jung,* 30 Wis., 362; *Vilas v. Jones,* 1 N. Y., 286; *Galbraith v. Fullerton,* 53 Ill., 126; 35 id., 40; 32 id., 22; 75 id., 215; 78 id., 446; 31 id., 400. 3. By the written composition in 1875, respondent waived the merely technical and inequitable defense of discharge by extension. *Joliffe v. Madison Ins. Co.,* 39 Wis., 111; *Allen v. Harrah,* 30 Iowa, 363. No consideration is necessary to support a waiver, nor will ignorance of his legal rights nullify the waiver. An indorser of a note who takes an assignment of the maker's estate, thereby waives demand and notice, and must pay. *Cheshire v. Taylor,* 29 Iowa, 492; 15 id., 447; 6 id., 191; *Mechanics' Bank v. Griswold,* 7 Wend., 165; 34 Me., 227; 5 Conn., 175; 3 Denio, 16; 5 Mass., 170; *Hinds v. Ingham,* 31 Ill., 403. By putting the note in the compromise agreement, respondent prevented appellant from doing the same thing, and thereby

directly and injuriously affected the rights of the latter. He is therefore estopped from denying his liability, whether he received the percentage or not. *Snyder v. Van Doren*, 46 Wis., 602; *Hale v. Danforth*, id., 554; *Hefner v. Vandolah*, 57 Ill., 520; *Givens v. Bank*, 85 id., 442.

For the respondent, there was a brief by *Orton & Osborn*, and oral argument by *Mr. Orton:*

1. Parol evidence is admissible to prove that a joint maker of a note is in fact a mere surety. But for the suggestion of the chief justice in *Harris v. Newell*, 42 Wis., 689, it would seem that this question was settled in this state by *Riley v. Gregg*, 16 Wis., 671. Independent of authority, however, and as an original proposition, the evidence is clearly admissible. The fact sought to be proved is not to contradict the written contract, but is outside of and collateral to it. The great weight of authority, also, is in favor of its admission. Brandt on Suretyship, 22; id., § 17, and cases there cited; Edwards on Bills, 573; *Pooley v. Harradine*, 7 Ell. & Bl., 431; *Greenough v. McClelland*, 105 E. C. L., 428; *Perley v. Loney*, 17 Up. Can. Q. B., 279; *Hubbard v. Gurney*, 64 N. Y., 457; *Barry v. Ransom*, 12 id., 462; *Easterly v. Barber*, 66 id., 433; *Sayles v. Sims*, 73 id., 551; *Colgrove v. Tallman*, 67 id., 95; *Carpenter v. King*, 9 Met., 511; *Harris v. Brooks*, 21 Pick., 195; *Davis v. Burrington*, 30 N. H., 517; *Grafton Bank v. Kent*, 4 id., 221; *Wheat v. Kendall*, 6 id., 504; *Smith v. Shelden*, 35 Mich., 42; *Gates v. Hughes*, 44 Wis., 332; *Bank of Steubenville v. Hoge*, 6 Ohio, 17; *Flynn, Ex'r, v. Mudd*, 27 Ill., 323; *Drew v. Drury*, 31 id., 250; *Kennedy v. Evans*, 31 id., 258; *Fowler v. Alexander*, 1 Heisk. (Tenn.), 425; *Mechanics' Bank v. Wright*, 53 Mo., 153; *Coats v. Swindle*, 55 id., 31; *Lime Rock Bank v. Mallett*, 34 Me., 547; *Piper v. Newcomer*, 25 Iowa, 221; *Kelly v. Gillespie*, 12 id., 55; *Bank of St. Albans v. Smith*, 30 Vt., 148; *Stewart v. Parker*, 55 Ga., 659; *Fraser v. McConnell*, 23 id., 368; *Branch Bank v. James*, 9 Ala., 949. 2. The

surety was discharged by appellant's extension of time to the principal without his consent. That the contract for such extension was usurious will not change the rule. Neither by the statutes of Wisconsin nor by those of Illinois is a usurious contract void. On the contrary, both distinctly affirm the validity of such contracts by allowing the recovery of the principal; merely imposing a penalty upon the lender for "accepting or receiving" illegal interest. It is important to note that the parties are not *in pari delicto*. It is oppression on one side and submission on the other. And though the borrower may set up usury for the purpose of avoiding a contract tainted with it, the lender cannot. This doctrine was announced in this state in the early case of *Riley v. Gregg*, 16 Wis., 672; and confirmed in *Austin v. Burgess*, 36 id., 192. *Vilas v. Jones*, 1 N. Y., 274, which has been regarded as holding a different rule, is expressly overruled by *Billington v. Wagoner*, 33 N. Y., 31, and *La Farge v. Herter*, 9 id., 243. *Meiswinkle v. Jung*, 30 Wis., 362, relied upon by appellant, seems to be in conflict with the other cases referred to; and in a note by C. J. Dixon to *Riley v. Gregg*, in the new edition of the reports, it appears that that case was overlooked in the latter decision; so that the question must be still regarded as an open one. Moreover *Meiswinkle v. Jung* was based upon the overruled case of *Vilas v. Jones*. Again, the contract in this case is an executed one. That a usurious contract of extension fully executed will release the surety, is held by a great number of authorities. *Danforth v. Semple*, 73 Ill., 170; *Myers v. First National Bank*, 78 id., 257; *Turrill v. Boynton*, 23 Vt., 142; *Scott v. Harris*, 76 N. C., 205; *Redman v. Deputy*, 26 Ind., 338; *Calvin v. Wiggam*, 27 id., 489; *Cross v. Wood*, 30 id., 378; *Grafton Bank v. Woodward*, 5 N. H., 99; *Austin v. Darwin*, 21 Vt., 38; *White v. Whitney*, 51 Ind., 124; *Scott v. Saffold*, 37 Ga., 384; *Corielle v. Allen*, 13 Iowa, 289; *Kelly v. Gillespie*, 12 id., 55.

COLE, J. On the face of the note, the defendant W. *Thomp-*

*son Adams* appears to be a joint maker. But parol testimony was offered on the part of the defense, and received against the plaintiff's objection, to show that he really signed the note as surety. The first error assigned here for a reversal of the judgment, is the admission of this testimony. It is insisted by the learned counsel for the plaintiff, that, to permit a party who appears to have signed a note as principal, to show by parol that he signed as surety, is a violation of the well settled rule of evidence, that a written contract cannot be contradicted or varied by parol testimony. But where the creditor knows, when the note is executed, that a party signs as surety, then, as we understand, the great weight of authority admits parol testimony to show that fact. It was so decided by this court in *Riley v. Gregg*, 16 Wis., 676, where the question was directly presented. DIXON, C. J., in that case, says that the admission of such testimony does not vary the effect of the undertaking, but is admissible to show that the creditor, who knows the real relation of the contracting parties, violates his faith impliedly given to the surety, not to interfere with those relations so as to impair his legal rights or diminish his remedies, when he extends the time of payment to the principal. It is not necessary that it should appear from the contract itself that one signed as surety and not as principal. Suretyship, being a collateral fact, may be shown by evidence *aliunde*. *Carpenter v. King*, 9 Met., 511.

To the same effect is the recent decision of the court of appeals of New York in *Hubbard v. Gurney*, 64 N. Y., 457. In this case CHURCH, C. J., examines the question at great length upon the authorities, and states, in substance, in the words of the head note, that "such evidence does not alter or vary the written contract, as the fact proved simply operates, when knowledge of it is brought home to the creditor, to prevent him from changing the contract or making a different one with the principal debtor without the consent of the surety, or from impairing the rights of the latter by releasing any

security or omitting to enforce the contract when requested."
It is true, in *Harris v. Newell*, 42 Wis., 687, the chief justice
stated that the court entertained a very grave doubt whether
one who appeared to have executed a promissory note as
principal could show by parol that he signed it as surety; but
this intimation was thrown out rather to invite further discus-
sion of the question than with the purpose of shaking or
overthrowing the decision in *Riley v. Gregg*. The intimation
has answered its purpose, and we are all now fully satisfied that
the latter case lays down the true rule upon the subject, and
is in strict accord with the weight of modern authority. It is
deemed unnecessary, therefore, further to consider the question.

In this case it was claimed that *W. Thompson Adams* was
discharged by an extension of time of payment given the firm
of Maynard & Adams, who were the principal debtors; and the
learned circuit judge so decided. We think, however, that the
findings of fact fail to show that the surety was discharged
by a valid agreement to extend the time of payment of the
note. In the second finding the circuit court in effect finds
that, about the time the note matured, in May, 1871, the plaint-
iff and the defendants Maynard & Adams made a contract, by
the terms of which the plaintiff agreed to extend the time of
payment of the note for one year, in consideration of being
paid for such extension the further sum of five per cent., in
addition to the ten per cent. interest which the note drew;
that sometime after the termination of such extended period
the firm paid $12.50 of the sum agreed to be paid for the ex-
tension, the plaintiff releasing them from the payment of the
remaining $12.50 of the consideration for the extension; also,
that the payment of the note was further extended from year
to year by like agreement, the firm paying for such exten-
sion each year the sum of $12.50, the amount agreed to be re-
ceived therefor by the plaintiff, until the failure of the firm in
1875; and that the surety had no knowledge of these various
extensions.

Now, according to our understanding of this finding, it shows an executory usurious agreement to extend the time of payment, which, under the decisions of this court, does not constitute a "basis or consideration upon or out of which any binding promise for that purpose could arise or be created." *Riley v. Gregg, supra; Meiswinkle v. Jung,* 30 Wis., 361; *St. Maries v. Polleys,* 47 Wis., 67. It is plain that each agreement to extend the time of payment was executory in its character, and was therefore void. The plaintiff did not place it out of his power at any time to enforce a collection of the note by action. Under such circumstances the surety was not released. But, if there were any doubt upon this point, the facts stated in the third finding show that *W. Thompson Adams* is estopped from insisting upon the defense. That finding is, that the firm of Maynard & Adams compromised with their creditors in 1875, paying forty per cent. of their claims; that this note was put in as a liability of the firm on such compromise, by *W. Thompson Adams,* or with his consent; that the firm paid forty per cent. of the note, but neither the plaintiff, who was not a party to the compromise, nor the defendant *W. T. Adams,* received any part of such payment, the sum being taken by J. L. Adams, upon a promise to pay the same to the plaintiff, which he never did. Now, if *W. T. Adams* treated this note at this time as an existing liability to him, and caused it to be included in the compromise, he should be estopped from saying he was not bound to pay the note in consequence of the extension. There could be no doubt of the correctness of this view, if *W. T. Adams* had actually received the forty per cent. upon it. But, that he did not receive it was owing to his own laches or default. He could have demanded it of the firm, and had the full benefit of the composition. It is true, *W. T. Adams* denies that this note was included in the claim which he presented against the firm on the compromise, and his testimony in that respect is corroborated by that of his brother, J. L. Adams. On the

other hand, Maynard testified that it was so included. We shall not stop to discuss the testimony as to whether it was or not, but accept the finding of the court as correct; for certainly there is no such clear preponderance of testimony against the second and third findings of the circuit court as would warrant us in disregarding them.

The issue on the affidavit of the plaintiff for a writ of attachment was tried with the main issue, and fell with it.

It follows, from the views which we have taken of the case, that the judgment of the circuit court upon both issues must be reversed, and the cause be remanded to give judgment for the plaintiff upon them.

*By the Court.* — So ordered.