E. R. Beyer Lumber Company and another, Respondents, v. Brooks, Appellant.

*No. 24.   Argued December 1, 1969.—Decided December 19, 1969.*
(Also reported in 172 N. W. 2d 654.)

For the appellant there was a brief by *Bakken & Feifarek* of Madison, and oral argument by *James F. Bakken*.

For the respondents there was a brief by *Stroud, Stroud, Stroud & Howard* of Madison, and oral argument by *C. Vernon Howard*.

CONNOR T. HANSEN, J. The issues in this case revolve around the status of the defendant when he signed the promissory note of October 17, 1960. Since the transaction was entered into prior to passage of the Uniform Commercial Code, "the rights, duties and interests flowing from them remain valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any statute amended or repealed by chapter 158, laws of 1963, as though such repeal or amendment had not occurred." Sec. 401.110 (1) (a), Stats.

Wisconsin cases interpreting the applicable statutes [1] have held that an accommodation party is primarily

---

[1] Sec. 116.01 (14), Stats. 1959, "**Definitions.** . . .

"(14) The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay same. All other parties are 'secondarily' liable.

Sec. 116.34, Stats. 1959, "**Accommodation party defined.** An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and

liable on the instrument and cannot utilize a number of defenses which were previously available prior to adoption of the Uniform Negotiable Instruments Law [2] (hereinafter NIL). In *Elkhorn Production Credit Asso. v. Johnson* (1947), 251 Wis. 280, 29 N. W. 2d 64, a father signed a note as an accommodation maker for his son, with the knowledge of the payee. As additional security for the note, the son gave to the payee a chattel mortgage on some farm machinery including a tractor. The payee released the lien of the mortgage on the tractor but did so over the objection of the father. The son defaulted on the note and the payee sued the father. The father raised the defense of release of collateral, claiming the release of the lien on the mortgage on the tractor resulted in a discharge on the note with respect to him. However, the father was held to be an accommodation maker and primarily liable on the note. In reaching that conclusion the court quoted from *Bosworth v. Greiling* (1934), 213 Wis. 443, 250 N. W. 856:

" 'The difficulty with defendant's second contention is that, while he was an accommodation maker, his liability to the bank was primary. Sec. 116.01, Stats., provides: "The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely

---

for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

[2] Under the Uniform Commercial Code a number of these defenses have been restored: "Section 403.606 restores to the accommodation party a number of suretyship defenses which existed under the common law but which, under the Wisconsin interpretation of the NIL, had been largely read out of the law. These include (a) the defense that time for payment or the right to bring action on the instrument has been extended without such accommodation party's consent, and (b) the defense that collateral has been impaired without such accommodation party's consent." Helstad, *The Impact Of The Uniform Commercial Code On Wisconsin Law*, 1964 Wisconsin Law Review, 355, 370.

required to pay same. All other parties are 'secondarily' liable." [Quoting sec. 116.34, *supra*.] . . . It seems clear, therefore, that the defendant was primarily liable to the bank even though the bank knew him to be only an accommodation party. *Schoenwetter v. Schoenwetter,* 164 Wis. 131, 159 N. W. 737; *Rosendale State Bank v. Holland,* 195 Wis. 131, 217 N. W. 645. The contention that defendant was discharged because the bank at various times had within its control the means of complete or partial satisfaction of the note is based upon sec. 117.38 (4a)—[*supra*]. That section is obviously not applicable to the facts here since the defendant was primarily, not secondarily, liable to the bank. We think defendant's second contention without merit.' " *Elkhorn Production Credit Asso. v. Johnson, supra,* page 284.

It has also been held that one who signs a note as a comaker and is primarily liable is not discharged by the extension of time granted by the payee to the maker without the accommodation maker's consent. *James Employees Credit Union v. Hawley* (1958), 2 Wis. 2d 490, 87 N. W. 2d 299; *Rosendale State Bank v. Holland* (1928), 195 Wis. 131, 217 N. W. 645.

Applying these principles to the present case, defendant signed the instrument without receiving value therefor, and for the purpose of lending his name to some other person (*i.e.,* Brooks & Woodington, Inc.). Sec. 116.34, Stats. 1959. The note states in part:

"For value received, the undersigned and each of them (if more than one) promises to pay to the order of E. R. Beyer Lumber Company, Inc., or Leona Beyer at Sheboygan, Wisconsin, or at such other address as the holder hereof may designate by written notice to the undersigned, the sum of Sixty Seven Thousand Five Hundred and No/100 Dollars ($67,500.00) with interest at the rate of Eight and one-half per cent (8½%) per annum from this date, . . .

"Payment of this note is collateralized by a deed given for security purposes to a property in Madison, Wisconsin consisting of seven apartment buildings of four units each known between the parties as Colony Park, Inc.

"Upon default in the payment of any installment of the Note for 90 days or in the performance or observance of any of the covenants and conditions contained herein, the entire unpaid balance of this Note and all accrued interest shall, at the option of the holder, become immediately due and payable. Presentation for payment, demand, notice of dishonor, protest, other notice of any kind, and all rights of valuation, appraisement, stay and exemption of property are hereby waived by the undersigned.

> "Brooks and Woodington, Inc.
> by /s/ Robert B. Brooks
> _____
> Robert B. Brooks, President
>
> by /s/ Neil A. Woodington          (Seal)
> _____
> Neil A. Woodington, Secretary
>
> /s/ Robert B. Brooks
> _____
> Robert B. Brooks, Individually
>
> /s/ Neil A. Woodington
> _____
> Neil A. Woodington, Individually"

There are no words limiting defendant's "promise[s] to pay to the order of E. R. Beyer Lumber Company," or anything to indicate defendant was secondarily liable. Thus defendant is primarily liable on the instrument notwithstanding the fact he was an accommodation party.

Defendant argues that plaintiffs must first pursue their rights against Brooks and Woodington, Inc., and only if the security provided by that corporation proves insufficient to satisfy the note can the plaintiff then proceed against the defendant. In addition, defendant claims the release of collateral without defendant's consent was also a release of defendant. The basis for these claims is an alleged oral agreement made contemporaneous with the note. Defendant contends the trial court incorrectly ruled parol evidence concerning the collateral agreement inadmissible and, therefore, a sub-

stantial issue of fact exists sufficient to defeat plaintiffs' motion for summary judgment.[3]

It is apparent the status defendant is seeking is guarantor, or secondary liability on the instrument.

"A contract of guaranty is an undertaking or promise on the part of one person which is collateral to a primary or principal obligation on the part of another, and which binds the guarantor to performance in the event of nonperformance by such other, the latter being bound to perform primarily. The agreement of the guarantor is that the principal will do what he has agreed to do. Thus, many cases dealing with the liability of one who signs a contract of guaranty of payment upon a negotiable instrument (usually by indorsement) declare the separate, collateral, and secondary nature of the obligation of such a person, dependent upon the default of his principal, and hold that he is never an original contractor or maker, or jointly liable with the principal, and that he is secondarily and not primarily liable. . . ." 11 Am. Jur. 2d, *Bills and Notes,* pp. 592, 593, sec. 533.

Can the defendant achieve the standing of secondary liability via parol evidence? We think not.

The terms of the note are clear, complete and unambiguous, and under the cases discussed, *supra,* defendant is primarily liable. Any evidence which defendant now puts forth showing secondary liability would vary the effect of the note. Such evidence is inadmissible under the parol evidence rule.

"Under the so-called 'parol evidence rule,' or statutes embracing such rule, in the situations in which such rule applies and apart from any exceptions to or limitations upon such rule, evidence of an oral agreement prior to, or contemporaneous with, the execution and delivery of a bill or note is not admissible to vary or contradict the written instrument. Thus, as a general rule a written contract evidenced by a bill or note governs the rights of the parties thereto and testimony of a contemporaneous oral agreement differing therefrom cannot be

[3] Sec. 270.635, Stats.

considered. The maker of a note is estopped from contradicting the plain language of his note." 12 Am. Jur. 2d, *Bills and Notes,* pp. 283, 284, sec. 1252.

". . . The defendant in his affidavit opposing the motion for summary judgment says:

" 'When said $60,000 and $30,000 were borrowed, and when the notes were subsequently renewed, it was agreed between affiant and plaintiff's president that affiant could pay said notes at any time, regardless of their maturity.'

"No such fact is alleged in the answer or either counterclaim. If we assume such agreement was made, the effect would be to vary the terms of the notes which are absolute on their face. No evidence of a verbal agreement made at the same time or prior thereto qualifying the terms of the notes can be admitted or considered in evidence. *Shea v. National Bank of De Pere,* 212 Wis. 626, 250 N. W. 424, and cases cited. . . ." *First Wisconsin Nat. Bank v. Pierce* (1938), 227 Wis. 581, 596, 278 N. W. 451. *See also Perry v. Riske* (1957), 2 Wis. 2d 377, 384, 86 N. W. 2d 429.

There are no issues of fraud, duress, mistake, accident, want of consideration, or defect in delivery which have, in some cases, resulted in exceptions to the parol evidence rule. There are, therefore, no reasons why the rule should not be applied in this case.

Defendant cites three cases for the proposition that as between original parties to an instrument, parol evidence is admissible to show that a person is a guarantor when on the face of the instrument he is a principal. *Irvine v. Adams* (1880), 48 Wis. 468, 4 N. W. 573; *Riley v. Gregg* (1863), 16 Wis. 697 (*666) ; *Ritter v. Bruss* (1902), 116 Wis. 55, 92 N. W. 361. However, these cases deal with instruments executed prior to adoption of the NIL when defenses normally attributed to secondary liability were available to an accommodation party. Thus, in those situations, evidence going to establish the secondary liability of an accommodation

party need not necessarily have varied the effect of the instrument.

Defendant, on oral argument, referred this court to *Miley v. Heaney* (1918), 168 Wis. 58, 70, 169 N. W. 64, wherein the court stated: "Upon the question as to whether she signed as principal or surety, the facts, to our minds, are equally conclusive . . . It is true, of course, that parol evidence is admissible to show that her contract is one of surety rather than of principal." This statement, however, was dicta and no authority was cited in support of the proposition. In addition, establishing a party as a "surety" has little if any significance under the NIL in an action brought by the creditor or promisee of the note.

"The NIL contains no express provision as to the liability of one who signs an instrument as surety, and it has been held that a comaker of a note who appends the word 'surety' to his name does not alter his liability as to the owner thereof.

"While the contract of a surety is, in a sense, accessory or collateral to a valid principal obligation contracted by another person, either contemporaneously or previously, his obligation to the creditor or promisee of the principal is direct, primary, and absolute. Suretyship is an undertaking to answer for the debt of another, by which the surety becomes bound as an original debtor is bound, and is therefore a primary obligation to see that the debt is paid. A surety on a negotiable instrument comes squarely within the definition of a person whose liability is primary under the NIL and who is absolutely required to make payment. . . ." 11 Am. Jur. 2d, *Bills and Notes*, p. 590, sec. 532.

Thus, under the NIL, admitting parol evidence to establish a suretyship relationship would not alter the effect of the instrument or render defendant secondarily liable.

The trial court correctly ruled on the inadmissibility of parol evidence and in granting the motion for summary judgment. Defendant, as a party primarily liable on the note, cannot insist that plaintiffs first exhaust

their remedies against the maker of the note, nor were they discharged by the release of collateral. *Elkhorn Production Credit Asso. v. Johnson, supra.*

By the Court.—Judgment affirmed.