ESTATE OF MOLAY: LONG, Guardian *ad litem*, Appellants, v. MOLAY and another, Respondents.

*No. 179. Argued March 4, 1970.—Decided March 31, 1970.*
(Also reported in 175 N. W. 2d 254.)

For the appellants there was a brief by *J. Richard Long* and *Blakely & Long,* all of Beloit, and oral argument by *J. Richard Long.*

For the respondent Sue E. Molay there was a brief by *William F. Donovan* and *Noll, Donovan & Bolgrien,* all of Beloit, and oral argument by *William F. Donovan.*

HEFFERNAN, J. No attempt has been made by the creditor, Beloit State Bank, to collect any portion of the indebtedness from Sue E. Molay, who was, with her husband, a signatory to the notes. It is apparent, however, that, if the surviving wife has an obligation to the estate by reason of being a comaker of the notes, the executor is obliged to seek contribution from her; and it is particularly the duty of the guardian *ad litem* to preserve the estate for the benefit of the children.

Sue E. Molay acknowledges the fact that the bank would have the right to proceed against her for the total amount of the indebtedness, but she contends that she was an accommodation maker only and, in the event of being held to her obligation, would be entitled to full restitution from the estate of Mike Molay. On the converse, she argues that the estate has no right to seek payment or contributions from her. Her position was, she alleges, merely that of a surety.

The jural relationship between an accommodation maker, the accommodated party, and the payee is not disputed by the parties.

The Negotiable Instruments Law was in effect at the time of the making of the notes in question. It has since been superseded by ch. 158 of the Laws of 1963, the Uniform Commercial Code. "Accommodation maker" was defined by the Negotiable Instruments Law, sec. 116.34, Stats. 1963, as:

". . . one who has signed the instrument as a maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

It is thus clear and undisputed that Sue Molay, even though only an accommodation maker, was liable to a holder for value, by virtue of her being a signatory on the note. *Perry v. Riske* (1957), 2 Wis. 2d 377, 86 N. W. 2d 429; *E. R. Beyer Lumber Co. v. Brooks* (1969), 45 Wis. 2d 262, 172 N. W. 2d 654. Accordingly, the Beloit State Bank could have proceeded against Sue Molay without seeking payment from the estate of Mike Molay, even though, as the accommodating party, she did not receive consideration for the transaction. *Perry v. Riske, supra.*

In the event an accommodation maker is obliged to pay the note, the accommodation maker has the right of recovery from the accommodated party to the extent of the payment as indemnification. The relationship is that of a surety, and the right of the accommodation maker to recover from the person accommodated arises, not out of the note on which both are makers, but upon the implied promise of the accommodated party to indemnify. In the event the accommodated party pays the entire debt, he has no right of action against the accommodating party. *Halbach v. Halbach* (1951), 259 Wis. 329, 48 N. W. 2d 617; *Estate of Onstad* (1937), 224 Wis. 332, 271 N. W. 652, 109 A. L. R. 630; Beutel's, *Brannan Negotiable Instruments Law* (7th ed.), p. 561, sec. 29; 5 Uniform Laws Annotated, *Uniform Negotiable Instruments Act*, part 1, pp. 428–430, sec. 29, note 81, and Cumulative Annual Pocket Part, pp. 173, 174; Britton, *Bills and Notes* (hornbook series, 2d ed.), p. 646, sec. 267.

The appellant takes the position, which legally is unassailable, that a party who receives consideration for the execution of the instrument cannot be considered an accommodation maker. He would acknowledge that Sue Molay would be an accommodation maker under the definition of the Negotiable Instruments Law, sec. 116.34, Stats. 1963, *supra,* in the event she received no

consideration for the transaction. He contends, however, that she did in fact receive consideration and, hence, cannot claim to be a mere surety.

His initial contention is that the note was under seal and recited that it was for a valuable consideration, and hence Sue Molay will not be heard to make claim to the contrary. He refers to sec. 116.29, Stats. 1963:

"**Presumptions.** Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."

The construction urged by the appellant is consonant with the purpose of the law—to further the ready negotiability of commercial paper and to protect subsequent holders—but it is not consonant with reason to give literal interpretation to the statute when the dispute is between the makers of the instrument.

It has been established that parol evidence is admissible to show that the person claiming to be merely an accommodation maker signed only as a surety and not for the purpose of receiving consideration from the transaction itself. While parol evidence is not admissible to vary the terms of an instrument, the question at issue here is not the obligation created by the note to the payee or subsequent holders, but the existence of an implied promise of suretyship between the signatories to the note. As a consequence the relationship between an alleged accommodation maker and the accommodated party can be shown by parol. *Perry v. Riske, supra,* page 384; *Garlie v. Rowe* (1928), 197 Wis. 257, 261, 221 N. W. 749, 223 N. W. 93.

In the event of an attempt by the executor to claim contribution from Sue Molay, a contingency sought to be avoided by the adjudication of this claim, Sue Molay could clearly assert the defense of no consideration. *Beyer Lumber Co. v. Brooks* (1969), 45 Wis. 2d 262,

172 N. W. 2d 654; *Perry v. Riske* (1957), 2 Wis. 2d 377, 384, 86 N. W. 2d 429; *Garlie v. Rowe* (1928), 197 Wis. 257, 221 N. W. 749, 223 N. W. 93. We conclude that Sue Molay is not barred by the statute from asserting that she received no consideration from the transaction.

The trial court properly permitted the admission of parol evidence for the purpose of showing that under the terms of sec. 116.34, Stats. 1963, she lent her name as an accommodation to her husband and without receiving value therefor. After hearing the evidence, the trial court concluded:

". . . Sue E. Molay signed the notes in question and the mortgages for the sole purpose of lending her name to her husband to enable him to obtain the loans."

This conclusion was based upon findings that Sue Molay had no part in negotiating the loans and that her name appeared only because the bank required the wife's signature in the event of any loan to a married man. It also found that Sue Molay received no consideration from any of these loans, and the sums involved did not concern her separate property or business. These findings if not contrary to the great weight and clear preponderance of the evidence must be sustained.

While an attempt is made to question the weight of the testimony, it cannot be seriously argued that the testimony adduced at the hearing does not support the findings. The objection chiefly urged is not that the evidence is insufficient, but that certain witnesses were incompetent to testify because of the prohibition of sec. 885.16, Stats., the dead man's statute. That statute provides:

**"Transactions with deceased or insane persons.** No party or person in his own behalf or interest, and no person from, through or under whom a party derives his interest or title, shall be examined as a witness in re-

spect to any transaction or communication by him personally with a deceased or insane person in any civil action or proceeding, in which the opposite party derives his title or sustains his liability to the cause of action from, through or under such deceased or insane person, or in any action or proceeding in which such insane person is a party prosecuting or defending by guardian, unless such opposite party shall first, in his own behalf, introduce testimony of himself or some other person concerning such transaction or communication, and then only in respect to such transaction or communication of which testimony is so given or in respect to matters to which such testimony relates. And no stockholder, officer or trustee of a corporation in its behalf or interest, and no stockholder, officer or trustee of a corporation from, through or under whom a party derives his or its interest or title, shall be so examined, except as aforesaid."

This court has frequently expressed its feeling that this statute rests upon an archaic view of the law—the view that one who has an interest in a controversy should not be allowed to testify. While the statute is occasionally, though rarely with any degree of sincerity, defended on the ground that it would be unfair to permit a survivor to give his version of a transaction when the other party's mouth is stopped in death, the more realistic position, and one which constitutes the underpinning of the decisions of this court, was stated in 1948 by George R. Currie, later Chief Justice of Wisconsin, in *Transactions with Deceased Persons,* 1948 Wisconsin Law Review 491, 505, quoting from 1 Wigmore, *Evidence* (3d ed.), p. 696, sec. 578:

" 'Are not the estates of living men endangered daily by the present rule which bars from proof so many honest claims? Can it be more important to save deadmen's estates from false claims, than to save living men's estates from loss by lack of proof?' "

Because of the evident lack of rational basis for the statute (2 Wigmore, *Evidence* (3d ed.), pages 674–729,

secs. 575–587, especially sec. 578, page 695; McCormick, *Evidence* (hornbook series), page 142, sec. 65), courts unabashedly take the position that its effect should be limited wherever possible and they urge its repeal. McCormick, *supra*, page 143, points out that commentators as far back as Jeremy Bentham (1748–1832) considered the rule of refusing to listen to the testimony of a survivor to a transaction with a deceased person to be "blind and brainless." Were the rule simply one of common law its pernicious effect would long ago have dictated its abolition. Since it is a rule of statutory law, the courts have merely been able to alleviate the harshness of the rule by insisting upon exceptionally strict rules for its invocation.

In *Estate of Robinson* (1963), 20 Wis. 2d 626, 631, 123 N. W. 2d 515, the court said:

"A long line of decisions by this court has made the operation of sec. 325.16 [now 885.16], dependent upon a proper objection. The objection must go to the competency of the witness. If the objection is to the evidence, it is insufficient. This would seem to be a highly restrictive requirement, but it is one which has been persistently followed by this court." *See, also, Cornell v. Barnes* (1870), 26 Wis. 473; *Union National Bank v. Hicks* (1886), 67 Wis. 189, 30 N. W. 234; *McCormick v. Herndon* (1887), 67 Wis. 648, 31 N. W. 303; *Sucke v. Hutchinson* (1897), 97 Wis. 373, 72 N. W. 880; *Wells v. Chase* (1905), 126 Wis. 202, 105 N. W. 799; *Zimdars v. Zimdars* (1941), 236 Wis. 484, 487, 295 N. W. 675; *Will of Schultz* (1948), 253 Wis. 86, 33 N. W. 2d 169; *Estate of Rohde* (1959), 8 Wis. 2d 50, 52, 98 N. W. 2d 440; *Estate of Chmielewski* (1962), 17 Wis. 2d 486, 493, 117 N. W. 2d 601.

In the recent case of *Carson v. Beloit* (1966), 32 Wis. 2d, 282, 288, 145 N. W. 2d 112, this court stated:

"To be valid, an objection based on sec. 325.16, Stats. [now 885.16], must be addressed not to the evidence as being inadmissible, but to the competency of the witness to testify to such conversation. This rule is of such long

standing one wonders why it continues to plague the trial bar."

The position of this court requiring a strict invocation of the rule is summarized in Mallare (CLEW), *Wisconsin Civil Trial Evidence,* page 24, sec. 1.663:

"A party waives the protection of the statute by failing to make the proper objection, which is to the competency of the *witness* to testify—not to the testimony. An objection to the evidence, or one which is vague and does not specifically mention the incompetency of the witness is not considered a proper objection."

*Wisconsin Civil Trial Evidence,* page 24, sec. 1.663, also points out that an objection to the competency of a witness, even though properly made, will be waived by any conduct of the objecting party which is inconsistent with the objection:

"When the party elects to cross-examine the witness about the transaction rather than object, he waives the protection of the statute. After having a proper objection overruled, however, the party may cross-examine the witness about any matter brought out on direct without waiving the benefit of the statute. If the cross-examiner pursues the interrogation into matters not dealt with on direct examination, he may also be denied protection of the statute."

In the instant case we are satisfied that a proper objection was never timely made; and, in any event, were we to construe the objections made to the "evidence" as being sufficient, subsequent cross-examination constituted a waiver of the objection. It should be pointed out that these probate proceedings were commenced in April of 1964 within a few days after the death of Mike Molay and have not been completed to this date. The claim of Sue Molay referred to above was filed on July 9, 1964, and the petition for declaratory judgment was filed by the Beloit State Bank on April 8, 1965. On October 18, 1967, the executor petitioned the court for an order

requiring Sue Molay and the guardian *ad litem* for the children to file a responsive pleading to the petition for declaratory judgment. An order directing the filing of such pleadings was issued by the court on November 14, 1967. The pleadings of Sue Molay were served on December 5, 1967, and the pleadings of the guardian *ad litem* were served on January 5, 1968. The hearings on the issues thus raised was for January 15, 1968, and the judgment from which the appeal was taken followed this hearing. We point this out because an examination of the record reveals that no objection to the competency of any of the witnesses as a result of the dead man's statute was made during the course of the testimony that ensued.

The only objections made to the testimony of Sue Molay or any of the other witnesses in this hearing were directed only to immateriality, irrelevancy, or "transactions with the deceased," but not to competency. We have carefully examined the record and find no occasion during the course of the hearing as defined above where objection was made on the basis that the witness was incompetent to testify. As stated above, such objections are wholly inadequate to exclude the testimony, and the protection of the statute cannot be thus invoked. We are therefore satisfied that the question of incompetency of the witnesses was not raised and the testimony was properly considered by the trial court.

We do not overlook the fact that on an earlier occasion, four months before the joining of the issues in this proceeding, a hearing of a preliminary nature was held, and at that time the guardian *ad litem* for the children stated that the testimony elicited from James T. Cleary, an officer of the executor bank, was within the purview of the dead man's statute and that under the terms of the dead man's statute the witness was not competent to testify. Sue Molay's testimony was not offered at this hearing, and no objection was at that time made specifi-

cally in regard to her testimony, although attorney for the guardian *ad litem* stated:

"I think Sue Molay incompetent under our statute to testify to this transaction involving Mike Molay. Statute 885.16 and to me this renders this witness incompetent."

Inasmuch as this objection was made prior to the framing of the issues on the petition for declaratory judgment, we are satisfied that this rather off-handed objection was insufficient to properly raise the question of the incompetency of the witnesses four months later on a hearing involving newly defined issues that are the subject matter of this appeal.

The record also reveals that at the hearing on January 15, 1968, Sue Molay was called directly by her own counsel. She testified to various matters. Her testimony, on several occasions, was objected to by the attorney for the guardian *ad litem*. In general, the objections were based on the allegation that the evidence was immaterial. On two occasions, however, counsel objected on the basis apparently of the dead man's statute. The objections were phrased as follows:

"Objection. Transaction with a deceased person. Also immaterial."

"Objection. . . . it is a transaction with a deceased person."

As pointed out above, under the strict interpretation which this court places upon the dead man's statute, such shorthand objections are insufficient to bring into question the competency of the witness. Moreover, as the trial judge pointed out, even were we to assume the efficacy of these objections, the subsequent cross-examination by counsel for the guardian *ad litem* constituted a waiver of the objection. If an objection properly made is overruled, the objecting counsel can cross-examine without risk of waiving his objection. If, however, an examination exceeds the scope of the direct examination

and by questions "beyond the scope" he elicits the very information that he sought to exclude, such examination "beyond the scope" constitutes a waiver of the objection.

We concur in the trial judge's conclusion that such cross-examination of Sue E. Molay by counsel for the guardian *ad litem* would in any event have waived the objection. Moreover, the only witness presented by the guardian *ad litem* was Sue E. Molay. She was called directly by him, and the evidence elicited from her on direct examination went directly to her knowledge of the disposition of the proceeds of the loan and was an attempt to show that Sue E. Molay knew or should have known that the loan transaction of October 24, 1963, was entered into by her husband and by Sue E. Molay for the purpose of purchasing title certificates to Arizona land in which she would be a beneficiary. This was information in regard to the very transaction that ostensibly counsel wished to exclude. Viewing the record as a whole, not only was there a failure to make adequate objections, but, even though adequate objections had been made, the subsequent questioning of Sue E. Molay on both cross-examination and direct-examination constituted a waiver of the objections.

We need not explore the sufficiency of the evidence, which we conclude was properly admissible. The evidence as admitted showed that Sue E. Molay was not a party to the negotiation carried on by her husband and had no knowledge of how the proceeds of the loan would be used. There is absolutely no evidence that she signed the two notes in question with the expectation that any consideration would flow to her as a result of the loan transaction, and in fact none did.

The evidence supports the finding that Sue E. Molay was an accommodation maker only of the two notes in question. Accordingly, the judgment of the court must be affirmed.

*By the Court.*—Judgment affirmed.