IN MATTER OF ESTATE OF Alphonse REIST, Deceased: GIESE, Individually and as Co-Personal Representative of the Estate, Appellant, v. Jacob REIST, Co-Personal Representative of the Estate, Respondent. [Case No. 76-740.]

IN MATTER OF ESTATE OF Alphonse REIST, Deceased: GIESE, Co-Personal Representative, Appellant, v. Jacob REIST, Co-Personal Representative of the Estate, Respondent. [Case No. 77-313.]

Supreme Court

*Nos. 76-740, 77-313. Argued May 29, 1979.—Decided June 29, 1979.*
(Also reported in 281 N.W.2d 86.)

210

For the appellant there was a brief by *Dale D. Miller* and *Trembath, Hess & Miller* of Wausau, and oral argument by *Dale D. Miller*.

For the respondent there was a brief by *Peter K. Schmidt* and *Schmidt & Schmidt, S.C.*, of Wausau, and oral argument by *Peter K. Schmidt*.

COFFEY, J. This is an appeal from an order that certain hospital bearer bonds (hereinafter hospital bonds) in the possession of the appellant, Helen Giese, were not a gift from the decedent, Alphonse Reist, her father, and ordering these hospital bonds distributed according to the law of intestate succession. Judgment was entered in the probate branch of the Marathon County Court in favor of the respondent, Jacob Reist, the decedent's son and co-personal representative of the estate. The appellant also appeals from a subsequent order in the same proceeding denying her motion as co-personal representative to the estate of Alphonse Reist for a new trial based on newly discovered evidence.

The decedent, Alphonse Reist, died intestate on November 29, 1975 survived by two children, Helen Giese and Jacob Reist. On December 12, 1975 a petition for the intestate administration of the assets of Alphonse Reist was filed by his son, Jacob Reist. About one month later the probate court appointed the heirs, Helen Giese and Jacob Reist, co-personal representatives of the decedent's estate.

After her appointment as co-personal representative, Mrs. Giese refused to co-operate in the preparation of an inventory of the decedent's assets and declined to provide necessary information concerning the decedent's hospital bonds. Jacob Reist petitioned the probate court for an order requiring Mrs. Giese to produce the hospital bonds and account for all income received therefrom and further to deposit the hospital bonds in the probate court to facilitate the filing of a proper inventory and accounting of decedent's assets.

At the hearing on the petition Mrs. Giese claimed that her father gave the hospital bonds valued at $99,806.18 to her. Even though the question of the ownership of the hospital bonds was not raised in the original petition, the parties stipulated that the issue of the hospital bond's ownership was properly before the court.

Mrs. Giese, after the July 6, 1979 hearing, substituted attorneys and her new counsel thereafter filed a brief in support of her alleged ownership of the hospital bonds. In the brief, reference was made to a memorandum of February 11, 1974, allegedly signed by the decedent, transferring ownership of the hospital bonds to Mrs. Giese. The court, after being advised of the existence of the alleged memorandum, sent a letter offering both parties an opportunity to request a hearing on its admissibility. On January 5, 1977 a hearing on the memorandum's admissibility was held at the request of the appellant, Helen Giese.

In an order dated February 1, 1977, the court found that the decedent, Alphonse Reist, had not made a gift of the hospital bonds to Mrs. Giese and directed that the hospital bonds be made a part of the decedent's estate. Judgment was entered in accordance with the court's order on the 28th of March, 1977 and the appellant filed a notice of appeal of the judgment on May 26, 1977.

Thereafter, on the 13th day of the following July, the appellant filed a motion with the court requesting a new trial based on newly discovered evidence. The alleged new evidence was a transcript of the deposition testimony of Otto Moritz, a friend of the decedent's. The motion for the new trial was denied by the court in a decision dated September 1, 1977. In its denial of the motion for new trial the court reasoned that the newly discovered evidence was cumulative in nature and would probably not change the court's original decision. An order dismissing the appellant's motion for a new trial

was entered September 17, 1977 and the appellant has appealed therefrom. The judgment and order in these proceedings were consolidated by stipulation of the parties and the following four issues are raised on appeal:

1. Did the probate court have jurisdiction to determine the lawful owner of the hospital bearer bonds prior to the filing of an estate inventory?

2. Did the decedent, Alphonse Reist, make a valid gift of the hospital bearer bonds to the appellant, Helen Giese, or did the bonds remain under his control and supervision and thus the property of the decedent?

3. Did the probate court commit error by refusing to allow the appellant or her husband to testify as to any transactions or dealings with the decedent based on the "dead man's statute," sec. 885.16, Wis. Stats?

4. Did the court commit error in refusing to grant a new trial pursuant to sec. 806.07 (1) (b), Wis. Stats?

*Probate Court's Jurisdiction*

The appellant maintains that in the absence of statutory authority the probate court is without jurisdiction to determine the ownership of the hospital bearer bonds until a proper inventory has been filed. In support of her argument, she cites:

"Probate courts have only such jurisdiction and powers as are conferred upon them by statute. *Gerlach v. Thiem,* 58 Wis.2d 113, 117, 205 N.W.2d 779 (1973); *Guardianship of Sykona,* 271 Wis. 455, 459, 74 N.W.2d 164 (1956)." *In Matter of Estate of Corey,* 73 Wis.2d 644, 647, 245 N.W.2d 902 (1976).

However, these decisions must be read in context with sec. 253.10 (2) (a), Wis. Stats. 1975, renumbered sec. 754.10 (2) (a), Laws of 1977, that provides probate courts are vested with the jurisdiction to determine issues of ownership in estates, whether by will or intestate. The statute recites as follows:

"The county court shall have concurrent jurisdiction to hear, try and determine all matters and controversies which may arise between any personal representative or guardian appointed by such court or trustee under any will admitted to probate in such court and any other person relating to title to or interest in real and personal property so far as such matter or controversy *is incidental to and necessary for the complete administration of the estate,* guardianship or trust, and *regardless of who has possession of the property or in whose name it may be,* to the same extent and with like effect as such matters and controversies may be heard, tried and determined in courts of general jurisdiction." (Emphasis supplied.)

*In Matter of Estate of Corey, supra* at 647–648, this court has interpreted the former statute, sec. 253.10 (2) (a) as providing;

". . . regardless of who has possession or in whose name the property may be, that the probate court has jurisdiction if there is a controversy over title and such controversy is incidental to and necessary for the complete administration of the estate."

In this case the controversy involves the issue of ownership of certain personal property, specifically hospital bearer bonds and whether the asset is to be considered part of the estate of Alphonse Reist or the personal property of Mrs. Helen Giese. A resolution of this question is necessary for "a complete administration of the estate . . ." as required by sec. 754.10 (2) (a), Wis. Stats. Thus, we determine the probate court had jurisdiction over the issue of the ownership of the hospital bonds even though this issue was not raised in the respondent's original petition. We hold this issue was properly before the court as a result of the parties stipulating to the court's jurisdiction at the close of the July 6, 1976 hearing. Further, in the absence of the appellant's counsel's failure to move to withdraw the stipulation it re-

mains part of the court record to be considered by this court.

The appellant next attacks the validity of the stipulation entered into on her behalf with her full knowledge and consent in her capacity as co-personal representative and claims that she should not be bound by this stipulation as an individual now claiming personal ownership over the hospital bonds. In addition, she claims it was error for the court not to advise her that her interests as a personal representative of the estate were in conflict with her individual interests in being declared the owner of the hospital bonds. However, it should be noted that the trial court's memorandum decision reflected that Mrs. Giese personally agreed to the July 6, 1979 stipulation:

"The Court, at the close of the testimony on the order to show cause and subpoena duces tecum, questioned counsel about the fact that the question of ownership of said bearer bonds was not in the petition of the objector and, therefore, was not properly before the Court. At that time, David Gorman, counsel for the claimants, and Peter Schmidt, counsel for the objector, each stipulated to the fact that the Court, on the testimony offered, would make the decision as to the ownership of said bearer bonds without further testimony, except counsel for the claimant, Helen Giese, was permitted to produce any admissible evidence pertaining to the claimant's claim of a written statement signed by her father within two weeks. The claimant, *Mrs. Giese, and Jacob Reist, were each asked to stipulate to such agreement of their attorneys, and they both agreed.*" (Emphasis supplied.)

Furthermore, Mrs. Giese fails to support her contention with authority which indicates that the court erred in accepting the parties' stipulation without informing Mrs. Giese as to its alleged potential effects. Moreover, we do not determine from this record that Mrs. Giese was prejudiced with the court's acceptance of the stipulation as thereafter she was given the opportunity to

substitute counsel, file an extensive brief on the issues of ownership and jurisdiction, as well as to participate in a full court hearing to determine the authenticity of the alleged February 11, 1974 memorandum.

*Did Decedent Make a Gift of the Bonds?*

In order to establish a valid gift, the following four elements must exist:

"1. Intention to give on the part of the donor.
"2. Delivery, actual or constructive, to the donee.
"3. Termination of the donor's dominion over the subject of the gift.
"4. Dominion in the donee." [citations omitted]. *Hoffman v. Wausau Concrete Co.,* 58 Wis.2d 472, 484, 207 N.W.2d 80 (1972).

Additionally, in *Hoffman* this court indicated that the alleged donee of a gift has the burden of proving that a gift was made. *Id.* at 488. The trial court found that the decedent had failed to make a gift of the hospital bonds to the appellant, Helen Giese, in that two of the *Hoffman* elements were not established. Specifically, the trial court first found ". . . that the claimant has failed to prove by sufficient credible evidence that her father intended to make a gift to her of all his hospital bonds." and secondly, ". . . that the claims failed to prove by credible evidence that Alphonse Reist terminated his ownership in said bearer bonds. . . ."

The findings of fact and determinations of the trial court on appeal will be sustained unless contrary to the great weight and clear preponderance of the evidence:

"Our court has held that this does '. . . not mean the evidence in support of the finding must "constitute the great weight or clear preponderance of the evidence." ' Nor it it sufficient for reversal that ' " 'there is evidence

to support a contrary finding.' " ' Rather, to command a reversal, such evidence in support of a contrary finding must itself ' " 'constitute the great weight and clear preponderance of the evidence.' " ' This standard, our court has stated, is 'heavily weighted on the side of sustaining trial court findings of fact in cases tried without a jury.' " *In re Estate of Jones*, 74 Wis.2d 607, 610–611, 247 N.W.2d 168 (1976).

The appellant contends that since a bearer bond is negotiable by the holder of the instrument a presumption of ownership must arise from the donee's proof that the bonds were in her possession. The appellant also contends that the evidence introduced at the two hearings (the petition hearing on July 6, 1976; the memorandum hearing on January 5, 1977) in this case supports a finding as to each element of a gift [intention to give, delivery to the donee, termination of the donor's dominion and the dominion in the donee] as recited in *Hoffman v. Wausau Concrete Co., supra.* Specifically, the appellant relies on the fact that for a period of six years prior to her father residing in a Wausau nursing home, Alphonse Reist, the decedent lived on the Giese's farm in Hamburg, Wisconsin. The record indicates that the decedent helped out with the farm chores but did not pay for food and lodging. Further, it is noted that Mrs. Giese aided her father in his correspondence and in certain business dealings. It is alleged that because of the appellant's kindness and assistance, the decedent made a gift of the hospital bonds to her.

In addition, the appellant relies on evidence that the decedent physically gave her the hospital bonds and she kept them in her safe in the house rather than the decedent's metal box in the garage wherein he kept his securities, pass books and certificates of deposit. Evidence was also received that Mrs. Giese alone knew the safe's combination and anytime the decedent wished to cash an interest coupon from the hospital bonds, it was

necessary for her to secure the same from the safe. Furthermore, Mrs. Giese contends that the memorandum, dated February 11, 1974, allegedly written by the decedent, Alphonse Reist, supports her contention that the hospital bonds had been given to her as a gift.

In support of the trial court's decision regarding the failure to prove the alleged transfer of ownership of the hospital bonds, the court relied on the following testimony of Mrs. Giese: "I was getting kind of leary to having it [the hospital bonds] in the garage." This statement supports the court's reasoning that even though the hospital bonds were in Mrs. Giese's safe, her possession was a means of protecting the hospital bonds against theft or loss. Therefore, Mrs. Giese was merely holding the hospital bonds as custodian for her father, not as the lawful owner resulting from a valid gift. Furthermore, Mrs. Giese testified that she did not consider her possession of the hospital bonds as a gift because "a gift is something with no strings attached." Mrs. Giese further agreed that since her father had kept the interest from the hospital bonds she did not consider them as a gift to her until his death.

The record also reflects that no gift tax return was ever filed and Mrs. Giese never cashed any of the interest coupons from the hospital bonds maturing after the decedent's death. Additionally, while Mrs. Giese claims the hospital bonds were a gift to her in consideration of the services she had rendered to her father during his stay on the the farm, the record indicates that she originally intended to file a claim against the estate in the amount of $10,000 for such services, although the claim was never filed.

Lastly, the trial court rejected the probative value of the decedent's alleged memorandum, noting that it was partially in script and partially printed and in

many respects, illegible and inconclusive. A copy of this memorandum appears below:

*TO HELEN GIESE ALL [illegible] Reist feb 11. 1974*

It should also be noted that a number of Alphonse Reist's hospital bonds over which Mrs. Giese claims ownership were purchased by the decedent subsequent to the date of the alleged memorandum. Therefore, we hold the evidence in the record supports the probate court's determination that a valid gift of the hospital bonds from Alphonse Reist to Helen Giese had not been made.

*Dead Man's Statute*

The dead man's statute, sec. 885.16, Wis. Stats., provides:

"**Transactions with deceased or insane persons.** No party in his own behalf or interest, and no person from, through or under whom a party derives his interest or title, shall be examined as a witness in respect to any transaction or communication by him personally with a deceased or insane person in any civil action or proceeding in which the opposite party derives his title or sustains his liability to the cause of action from, through or under such deceased or insane person is a party prosecuting or defending by guardian, unless such

opposite party shall first, in his own behalf, introduce testimony of himself or some other person concerning such transaction or communication, and then only in respect to such transaction or communication of which testimony is so given or in respect to matters to which such testimony relates."

The dead man's statute is not looked upon with favor by this court for two reasons:

(1) it ". . . rests upon an archaic view of the law— the view that one who has an interest in a controversy should not be allowed to testify." *Estate of Molay*, 46 Wis.2d 450, 458, 175 N.W.2d 254 (1969)

and

(2) there is an ". . . evident lack of rational basis for the statute [citations omitted] . . ." *Id.* at 458.

Because the statute is viewed with disfavor courts have attempted to limit the effect of the statute whenever possible. One of the methods used to limit the statute's effect is to require that the statute be strictly interpreted. *Estate of Vale*, 61 Wis.2d 564, 213 N.W.2d 552 (1974). This includes strict rules for the invocation or use of the dead man's statute. *Estate of Molay*, *supra*. For example, in the case of *Carson v. Beloit*, 32 Wis.2d 282, 288, 145 N.W.2d 112 (1966), this court indicated that a valid objection based on sec. 885.16 "must be addressed not to the evidence as being inadmissible, but to the competency of the witness to testify to such conversation."

This court holds to the view that unless there is a proper objection the dead man's statute should not be applied:

" 'A party waives the protection of the statute by failing to make the proper objection, which is to the competency of the *witness* to testify—not to the testimony. An objection to the evidence, or one which is vague and does not specifically mention the incom-

petency of the witness is not considered a proper objection.' Mallare (CLEW), Wisconsin Civil Trial Evidence, page 24 sec. 1.663:" *Estate of Molay, supra* at 460.

The first occasion in which the dead man's statute objection was raised occurred during the July 6th hearing. At that hearing Mr. Reist was cross-examined by appellant's counsel and an objection was entered:

"*Q.* Mr. Reist did you ever hear your father indicate at any time that these hospital bonds were to be your sister's at the time of his death?

"*Mr. Schmidt:* I object, Your Honor, if that line of questioning is going to take place, as being a translation with a deceased person, and I feel, Your Honor, that what anyone indicates by a verbal conversation would not be appropriate."

Similarly, at the same July 6th hearing when Mrs. Giese was being questioned by her attorney, the following exchange took place:

"*Q.* And would you explain because I didn't understand? Would you explain to the Court on what theory you based your claim that these bonds belong to you rather than part of the estate?

"*A.* Well, see I lived with my father and he never gave me anything. So he had these, and he said, 'You are the holder, but I want interest as long as I am living.' So really I never had anything from him as long as he was living.

"*Mr. Schmidt:* May it please the Court, any transaction with a deceased person is *inadmissible* and . . .

"*The Court:* What is your objection?

"*Mr. Schmidt:* I am objecting accordingly.

"*The Court:* Objection sustained." (Emphasis supplied.)

The objection made by Mr. Schmidt, the attorney for the respondent, as to the inadmissibility of the evidence was an improper objection as it failed to challenge the competency of the witness to testify to a transaction with the decedent and thus did not properly raise the protection of the dead man's statute. *Carson v. Beloit, supra.*

Subsequently, at the January 5, 1977 hearing respondent's attorney correctly modified his objection under the dead man's statute so as to phrase the objection in terms of the *incompetency* of the witness to testify as to any transaction or conversation with a deceased person. However, at this time, the respondent had in effect waived the protection of the dead man's statute as his earlier objection was to the inadmissibility of the evidence rather than an objection to the incompetency of the witness. Thus, the trial court erred in relying upon the dead man's statute in sustaining the respondent's improper objections to Mrs. Giese's testimony regarding her conversations with the decedent about the hospital bonds.

Additionally, we hold the trial court erred when it sustained the objection of the respondent to LaVern Giese's (the appellant's husband) testimony of a conversation with the decedent, again based on the dead man's statute. This court has indicated that:

". . . the true test of the disqualifying interest of the witness is whether he will gain or lose by the direct legal operation and effect of the judgment. . . ." *In re Estate of Christen,* 72 Wis.2d 8, 12, 239 N.W.2d 528 (1976).

Therefore, the interest of the witness must be present, certain and vested, not just a remote or contingent interest. *In re Estate of Christen, supra.* In *Christen* the court found a man who was not a party to the action but was the husband of one of the parties who stood subject to gain under the proceeding, competent to testify under the dead man's statute because the husband's interest in his wife's estate was too remote and contingent. *In re Estate of Christen, supra.* In the present case LaVern Giese stands in the same position as the husband in *Christen* as he was not a party to the action and his interest was remote and contingent. LaVern

Giese was competent to testify as to transactions and communications with the decedent.

■

This court finds that while the trial court erred when it refused to allow the appellant or her husband to testify as to transactions or communications with the decedent, the error constitutes harmless error under sec. 805.18(2), Wis. Stats. The trial judge recited in his reasoning that even if the testimony of the appellant and her husband had been considered by the court it would not have changed the court's decision. Reviewing the improperly excluded testimony in the light most favorable to the appellant, we find the evidence would only have demonstrated an intent on the part of the decedent to make a gift of the hospital bonds but it failed to supply the missing element to establish the transfer of dominion and control necessary for the valid gift.

For the reasons stated above, we hold the trial court's error did not adversely affect the appellant's substantial rights and thus we will not disturb the trial court's finding.

*Newly Discovered Evidence*

The appellant has also sought a new trial based on newly discovered evidence. Sec. 805.15(3), Wis. Stats., sets out the basis for a new trial on account of newly discovered evidence:

"A new trial shall be ordered on the grounds of newly discovered evidence if the court finds that:

"(a) The evidence has come to the moving party's notice after trial; and (b) The moving party's failure to discover the evidence earlier did not arise from lack of diligence in seeking to discover it; and (c) The evidence is material and not cumulative; and (d) The new evidence would probably change the result."

■

Whether to grant the motion for a new trial is left up to the discretion of the trial court:

"The granting of a new trial on the ground of newly discovered evidence rests within the sound discretion of the trial court and its determination will not be set aside unless it is shown to be a clear abuse of such discretion." *In re Teasdale's Estate*, 264 Wis. 1, 7, 58 N.W.2d 404 (1953).

The newly discovered evidence in this case consisted of a deposition transcript of a Mr. Otto Moritz, a friend of the decedent. His deposition testimony was limited solely to the question of whether the decedent intended to make a gift of the hospital bonds to the appellant, Helen Giese. The trial court properly found this evidence insufficient to supply proof of the absent element of a transfer of dominion and control necessary to complete a valid gift, pursuant to the four element test set forth in *Hoffman v. Wausau Concrete Co., supra*. The trial court's finding in denying the request for a new trial on the reasoning that the evidence was cumulative in nature and would not alter or effect its earlier decision is thus supported by the record.

Therefore, we hold the trial court's finding that the decedent had not made a valid gift of the hospital bonds to his daughter, Helen Giese, is not contrary to the great weight and clear preponderance of the evidence. Further, we conclude that the record supports that the alleged new evidence was cumulative in nature and only serves to support the trial court's earlier decision. Thus, we hold the record void of an abuse of discretion and decline to order a new trial on the grounds of newly discovered evidence.

*By the Court.*—Judgment and order affirmed.